## SWAIM *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 83.   Argued January 7, 1897. — Decided March 1, 1897.

It is within the power of the President, as commander-in-chief, to convene a general court-martial, even when the commander of the accused officer to be tried is not the accuser.

A charge was made by letter against an officer in the army; the letter was referred to a court of inquiry to investigate; on the receipt of its report charges and specifications against him were prepared by order of the Secretary of War; and the President thereupon appointed a court-martial to pass upon the charges. *Held*, that such routine orders did not make the President his accuser or prosecutor.

In detailing officers to compose a court-martial the presumption is that the President acts in pursuance of law; and its sentence cannot be collater-

ally attacked by going into an inquiry, whether the trial by officers inferior in rank to the accused was or was not avoidable.

When a court-martial has jurisdiction of the person accused and of the offence charged, and acts within the scope of its lawful powers, its proceedings and sentence cannot be set aside by the civil courts.

The action of the President in twice returning the proceedings of the court-martial, urging a more severe sentence, was authorized by law; and a sentence made after such action, and in consequence of it, was valid.

When an officer in the army is suspended from duty, he is not entitled to emoluments or allowances.

On February 23, 1891, David G. Swaim filed in the Court of Claims a petition against the United States, alleging that he was on the 30th day of June, 1884, and still was, judge advocate-general of the army of the United States, with the rank, pay and allowance of a brigadier-general therein. He complained that, by reason of the unlawful creation and action of a certain court-martial, he had been, on February 24, 1885, suspended from rank and duty for twelve years, and that one half of his pay had been forfeited for that period. For reasons set forth in the petition, the claimant asked that the proceedings, findings and sentence of the said court-martial should be declared to be void, and that judgment should be rendered, awarding him the amount of his pay and allowances retained in pursuance of the said sentence.

The Court of Claims made, upon the evidence, certain findings of fact, and, on the 27th day of February, 1893, entered a final judgment dismissing the claimant's petition. 28 C. Cl. 173. From that judgment an appeal was taken to this court.

*Mr. Benjamin Butterworth* (on whose brief was *Mr. Julian C. Dowell*) and *Mr. J. H. Gillpatrick* for appellant.

*Mr. Attorney General* for appellees.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

The theory of the claimant's petition was that the sentence

of the court-martial was void, and hence constituted no defence to his action for his retained pay.

It was said by this court in *Dynes* v. *Hoover*, 20 How. 65, 82, that " with the sentences of courts-martial which have been convened regularly, and have proceeded regularly, and by which punishments are directed, not forbidden by law, or which are according to the laws and customs of the sea, civil courts have nothing to do, nor are they in any way alterable by them. If it were otherwise, the civil courts would virtually administer the rules and articles of war irrespective of those to whom that duty and obligation have been confided by the laws of the United States, from whose decisions no appeal or jurisdiction of any kind has been given to the civil magistrate or civil courts."

*Keyes* v. *United States*, 109 U. S. 336, was, like the present, a suit in the Court of Claims to recover back pay alleged to have been wrongfully retained by reason of an illegal judgment of a court-martial, and the rule was laid down thus: " That the court-martial, as a general court-martial, had cognizance of the charges made, and had jurisdiction of the person of the appellant, is not disputed. This being so, whatever irregularities or errors are alleged to have occurred in the proceedings, the sentence must be held valid when it is questioned in this collateral way," but " where there is no law authorizing the court-martial, or where the statutory conditions as to the constitution or jurisdiction of the court are not observed, there is no tribunal authorized by law to render the judgment."

In *Smith* v. *Whitney*, 116 U. S. 167, these cases were cited with approval, and numerous other decisions, both English and American, were cited to the same effect. We shall have occasion to revert to this case at a subsequent portion of this opinion when examining some of the objections urged to the action of the court-martial.

With these general principles in view we shall now briefly consider the several contentions urged on behalf of the appellant.

The first of these challenges the authority of the President

of the United States to appoint the general court-martial in question. The argument is based on the phraseology of the seventy-second article of war, contained in section 1342 of the Revised Statutes, as follows:

"Any general officer, commanding the army of the United States, or separate army, or a separate department, shall be competent to appoint a general court-martial, either in time of peace or in time of war. But when any such commander is the accuser or prosecutor of any officer under his command, the court shall be appointed by the President, and its proceedings and sentence shall be sent directly to the Secretary of War, by whom they shall be laid before the President for his approval or orders in the case."

It is claimed to be the legal implication of this section that the power of the President to appoint a court-martial is restricted to the single case where the commander of an officer charged with an offence is himself the accuser or prosecutor, and that, as in the present case, General Sheridan, the immediate commander of the appellant, was not the accuser or prosecutor, the right of the President to make the order convening the court-martial did not arise. In other words, the contention is that in the seventy-second article of war, just quoted, is found the only power of the President, as commander-in-chief of the armies of the United States, to appoint a general court-martial.

This view of the President's powers, in this particular, was asserted in *Runkle's case*, 19 C. Cl. 396, 409, but was not approved by the Court of Claims, which held that when authority to appoint courts-martial was expressly granted to military officers, the power was necessarily vested in the commander-in-chief, the President of the United States. Chief Justice Drake, after quoting from writers on military law in support of the statement that the authority of the President to appoint general courts-martial, had, in fact, been exercised from time to time from an early period, said:

"As commander-in-chief the President is authorized to give orders to his subordinates, and the convening of a court-martial is simply the giving of an order to certain officers

to assemble as a court, and, when so assembled, to exercise certain powers conferred upon them by the articles of war. If this power could not be exercised, it would be impracticable, in the absence of an assignment of a general officer to command the army, to administer military justice in a considerable class of cases of officers and soldiers not under the command of any department commander — as, for example, a large proportion of the officers of the general staff, and the whole body of the retired officers."

On appeal, the judgment of the Court of Claims was reversed by this court on the sole ground that the record did not disclose that the sentence of the court-martial had been approved by the President, as prescribed in express terms by the seventy-second article of war. As this court, in its opinion, did not think fit to notice or discuss the question of the power of the President to appoint the court-martial, the case must be deemed an authority for the proposition that the court-martial had been properly convened by the order of the President as commander-in-chief.

It may be interesting to notice, as part of the history of this question, that the Senate of the United States, by a resolution adopted February 7, 1885, directed its Committee on the Judiciary to report, among other things, whether, under existing law, an officer may be tried before a court-martial appointed by the President in cases where the commander of the accused officer to be tried is not the accuser, and that the committee, after an examination of the question, expressed its conclusions in the following language:

"Under the present Constitution, when, for the first time in 1806, Congress enacted a code on the subject, it changed the imperative language of the articles of war existing under the confederation, and simply provided that any general officer commanding an army, etc., may appoint general courts-martial, thus evidently intending to confer an authority, and not to exclude the inherent power residing in the President of the United States under the Constitution. The substance of this provision has been in force ever since, and from the formation of the Constitution until the present time the com-

mittee is advised that the President of the United States has, at all times, when in his opinion it was expedient, constituted general courts-martial.

" In this state of the history of legislation and practice, and in consideration of the nature of the office of commander-in-chief of the armies of the United States, the committee is of opinion that the acts of Congress which have authorized the constitution of general courts-martial by an officer command-ing an army, department, etc., are, instead of being restrictive of the power of the commander-in-chief, separate acts of leg-islation, and merely provide for the constitution of general courts-martial by officers subordinate to the commander-in-chief, and who, without such legislation, would not possess that power, and that they do not in any manner control or restrain the commander-in-chief of the army from exercising the power which the committee think, in the absence of leg-islation expressly prohibitive, resides in him from the very nature of his office, and which, as has been stated, has always been exercised."

Without dwelling longer on this question, we approve the conclusion reached by the Court of Claims, that it is within the power of the President of the United States, as com-mander-in-chief, to validly convene a general court-martial even where the commander of the accused officer to be tried is not the accuser.

The contention that the President of the United States was, in the present case, the accuser or prosecutor of the appellant, within the meaning of the seventy-second article of war, is, we think, wholly unfounded. The accusation was made by one A. E. Bateman, in a letter addressed to the Secretary of War, dated April 16, 1884. Thereupon, on April 22, 1884, the President appointed a court of inquiry to examine into the accusations made in the letter of Bateman to the Secre-tary of War. Upon the report of the court of inquiry, by order of the Secretary of War, the subject was referred to Major R. N. Scott, with directions to prepare charges and specifications against General Swaim; and on June 30, 1884, the President appointed the general court-martial which pro-

·ceeded to hear and pass upon the charges and specifications. It is not seen how these routine orders which led to the trial ·of the appellant can be construed as making the President his accuser or prosecutor.

It is next contended that, even if the court-martial in the present case were validly convened by the order of the President, yet that it was constituted in violation of the seventy-ninth article of war, which provides that "officers shall be tried only of general courts-martial; and no officer shall, when it can be avoided, be tried by officers inferior to him in rank."

It appears that a majority of the court-martial as organized for the trial was composed of colonels, officers inferior in rank to the appellant, whose rank was that of brigadier-general; and it is argued that the record does not affirmatively disclose that the appointment of officers inferior in rank to the accused was unavoidable by reason of some necessity of the service.

In *Martin* v. *Mott*, 12 Wheat. 19, 34, 35, it was contended that, where the articles of war provided that "general courts-martial may consist of any number of commissioned officers from five to thirteen inclusively; but they shall not consist of less than thirteen where that number can be convened without manifest injury to the service"; and where the court-martial in question consisted of six officers only, the court was not legally formed, because the government's pleading in the ·case did not affirmatively show that thirteen officers could not have been appointed " without manifest injury to the service."

Replying to this, the court, through Mr. Justice Story, said:

" Supposing these claims applicable to the court-martial in ·question, it is very clear that the act is merely directory to the ·officer appointing the court, and that his decision as to the number' which can be convened without manifest injury to the service, being a matter submitted to his sound discretion, must be conclusive."

In *Mullan* v. *United States*, 140 U. S. 240, 245, the case was ·one where Mullan sued in the Court of Claims to recover pay ·as commander in the navy accruing after he had been dismissed by the sentence of a court-martial, which sentence was

alleged to be void, because the court was illegally formed, in that five of its seven members were junior in rank to the accused, the thirty-ninth article for the government of the United States navy providing that in no case, where it can be avoided without injury to the service, shall more than one half, exclusive of the president, be junior to the officer to be tried. But this court, through Mr. Justice Harlan, said: "Whether the interests of the service admitted of a postponement of the trial until a court could be organized of which at least one half of its members, exclusive of the president, would be his seniors in rank, or whether the interests of the service required a prompt trial upon the charges preferred, by such officers as could then be assigned to that duty by the commander-in-chief of the squadron, were matters committed by the statute to the determination of that officer. And the courts must assume — nothing to the contrary appearing upon the face of the order convening the court — that the discretion conferred upon him was properly exercised, and, therefore, that the trial of the appellant 'by a court, the majority of whom were his juniors in rank, could not be avoided 'without injury to the service,'" citing *Martin* v. *Mott*, 12 Wheat. 19.

In the present case, several considerations might have determined the selection of the members of the court, such as the health of the officers within convenient distance, or the injury to the public interests by detaching officers from their stations. The presumption must be that the President, in detailing the officers named to compose the court-martial, acted in pursuance of law. The sentence cannot be collaterally attacked by going into an inquiry whether the trial by officers inferior in rank to the accused was or was not avoidable.

Error is assigned to the Court of Claims in overruling an exception to the action of the court-martial in permitting, after objection made, an officer to sit on the trial whom the appellant, in the performance of his official duty, on several occasions severely criticised in official reports, and whose enmity and dislike had been thereby incurred. This error

is sufficiently disposed of by quoting the provisions of the eighty-eighth article of war: "Members of a court-martial may be challenged by a prisoner, but only for cause stated to the court. The court shall determine the relevancy and validity thereof, and shall not receive a challenge to more than one member at a time." The decision of the court-martial in determining the validity of the challenge could not be reviewed by the Court of Claims in a collateral action.

Objections were made to the action of the court-martial in permitting a person to act as judge advocate who was not appointed by the convening officer of the court-martial, nor sworn to the faithful performance of his duty, in receiving oral and secondary evidence of an account when books of original entry were available; in receiving evidence to implicate the accused in signing false certificates relating to money which formed no part of the subject-matter of the charges on trial; in refusing to permit evidence as to the bad character of a principal witness for the prosecution; in refusing to hear the testimony of a material witness for the defence.

It was the opinion of the Court of Claims that the errors so assigned could not be reviewed collaterally, and that they did not affect the legality of the sentence; and in so holding we think that court followed the authorities. Such questions were merely those of procedure, and the court-martial having jurisdiction of the person accused and of the offence charged, and having acted within the scope of its lawful powers, its proceedings and sentence cannot be reviewed or set aside by the civil courts. *Dynes* v. *Hoover,* 20 How. 65; *Ex parte Reed,* 100 U. S. 13; *Smith* v. *Whitney,* 116 U. S. 167; *Johnson* v. *Sayre,* 158 U. S. 109.

It is strongly urged that no offence under the sixty-second article of war was shown by the facts, and that the Court of Claims should have so found and have held the sentence void. If this position were well taken it would throw upon the civil courts the duty of considering all the evidence adduced before the courts-martial and of determining whether the accused was guilty of conduct to the prejudice of good order and military discipline in violation of the articles of war.

But, as the authorities heretofore cited show, this is the very matter that falls within the province of courts-martial, and in respect to which their conclusions cannot be controlled or reviewed by the civil courts. As was said in *Smith* v. *Whitney*, 116 U. S. 178, "of questions not depending upon the construction of the statutes, but upon unwritten military law or usage, within the jurisdiction of courts-martial, military or naval officers, from their training and experience in the service, are more competent judges than the courts of common law. . . . Under every system of military law for the government of either land or naval forces, the jurisdiction of courts-martial extends to the trial and punishment of acts of military or naval officers which tend to bring disgrace and reproach upon the service of which they are members, whether those acts are done in the performance of military duties, or in a civil position, or in a social relation, or in private business."

In *United States* v. *Fletcher*, 148 U. S. 84, will be found observations to the same effect.

It is earnestly contended that upon the fourteenth finding of the Court of Claims it was the duty of that court to set aside the sentence. That finding was as follows:

"The court-martial having reached a finding and having thereupon sentenced claimant upon the charges promulgated, in the said general court-martial orders, No. 19, and the reviewing officer having referred to the court for trial another set of charges alleging fraud and conduct unbecoming an officer and a gentleman, under the sixtieth and sixty-first articles of war, as promulgated in general court-martial orders, No. 20, of 1885, and the court-martial having heard all the evidence for the prosecution therein (except an absent witness, but with a statement as to what such witness would testify to), thus making a *prima facie* case against claimant, and he not having presented a defence, the reviewing authority returned the case promulgated in said court-martial orders, No. 19, to the court for reconsideration and a more severe sentence, with an opinion of the Attorney General hereinbefore set forth, which proceedings were with closed doors, and of which claimant had no notice at the time."

In order to apprehend the legal effect of this finding we should read a portion of the history of the case as stated in the opinion of the Court of Claims:

"The question of fraud being out of the case, and the court-martial having properly acquitted the claimant on the charge of conduct unbecoming an officer and a gentleman, imposed this sentence: 'To be suspended from rank, duty and pay for the period of three years.' The record then went to the President and was by him referred to the Attorney General. On the 11th of February, 1885, the President returned the record to the court-martial 'for reconsideration as to the findings upon the first charge only, and as to the sentence, neither of which are believed to be commensurate with the offences as found by the court in the first and third specifications under the first charge.' The President also communicated to the court the opinion of the Attorney General, 'whose views,' he added, 'upon the matter submitted for reconsideration have my concurrence.'

"The court-martial adhered to its determination that the facts found did not constitute the offence charged, but imposed a second sentence upon the accused, the language of which is as follows: 'The court, upon mature reconsideration, has not found the accused guilty of such degree of wrongful or deceitful conduct as to justify a finding of guilty of conduct unbecoming an officer and a gentleman, and has therefore respectfully adhered to its findings upon the first charge.' But the court imposed the following sentence: 'To be suspended from rank and duty for one year, with forfeiture of all pay for the same period, and at the end of that period to be reduced to the grade of judge advocate with the rank of major in the judge advocate-general's department.' This sentence the President likewise disapproved, because, as he thought, that part of the sentence that provided that the accused should be reduced in rank could not be carried into effect by the executive alone, but would require a nomination by the President and confirmation by the Senate, and then only in case of an existing vacancy.

"The court a third time deliberated, and then imposed the

sentence which was approved by the President and carried into effect, and which the claimant now attacks. It is 'to be suspended from rank and duty for twelve years and forfeit one half his monthly pay every month for the same period.'"

It is claimed that the action of the President in thus twice returning the proceedings to the court-martial, urging a more severe sentence, was without authority of law, and that the said last sentence having resulted from such illegal conduct was absolutely void. This contention is based upon the proposition that the provision in the British Mutiny Act, which was in force in this country at the time and prior to the American Revolution, and which regulates proceedings in courts-martial, is applicable. This provision was as follows.: "The authority having power to confirm the findings and sentence of a court-martial, may send back such findings and sentence, or either of them, for revision once, but not more than once, and it shall not be lawful for the court on any revision to receive any additional evidence, and when the proceedings only are sent back for revision the court shall have power, without any direction, to revise the sentence also. In no case shall the authority recommend the increase of a sentence, nor shall the court-martial, on revisal of the sentence, either in obedience to the recommendation of the authority or for any other reason, have the power to increase the sentence awarded."

Even if it be conceded that this provision of the British Mutiny Act was at any time operative in this country, the subject is now covered by the Army Regulations, 1881, section 923, relied upon by the Attorney General in his letter to the President and cited by the Court of Claims, which is as follows:

"When a court-martial appears to have erred in any respect, the reviewing authority may reconvene the court for a consideration of its action, with suggestions for its guidance. The court may thereupon, should it concur in the views submitted, proceed to remedy the errors pointed out, and may modify or completely change its findings. The object of reconvening the court in such a case is to afford it

an opportunity to reconsider the record for the purpose of correcting or modifying any conclusions thereupon, and to make any amendments of the record necessary to perfect it."

This regulation would seem to warrant the course of conduct followed in the present case. In *Ex parte Reed*, 100 U. S. 13, a somewhat similar contention was made. There a court-martial had imposed a sentence which was transmitted with the record to Admiral Nichols, the revising officer, who returned it with a letter stating that the finding was in accordance with the evidence, but that he differed with the court as to the adequacy of the sentence. The court revised the sentence and substituted another and more severe sentence, which was approved. The accused filed a petition for a writ of *habeas corpus* in this court; and it was claimed that the court had exhausted its powers in making the first sentence, and, also, that it was not competent for the court-martial to give effect to the views of the revising officer by imposing a second sentence of more severity. The Navy. Regulations were cited to the effect that the authority who ordered the court was competent to direct it to reconsider its proceedings and sentence for the purpose of correcting any mistake which may have been committed, but that it was not within the power of the revising authority to compel a court to change its sentence, where, upon being reconvened by him, they have refused to modify it, nor directly or indirectly to enlarge the measure of punishment imposed by sentence of a court-martial.

This court held that such regulations have the force of law, but that as the court-martial had jurisdiction over the person and the case, its proceedings could not be collaterally impeached for any mere error or irregularity committed within the sphere of its authority; that the matters complained of were within the jurisdiction of the court-martial; that the second sentence was not void; and, accordingly, the application for a writ of *habeas corpus* was denied. We agree with the Court of Claims that the ruling in *Ex parte Reed*, in principle, decides the present question.

We think that the Court of Claims did not err in hold-

ing that where an officer is suspended from duty he is not entitled to emoluments or allowances. *United States v. Phisterer*, 94 U. S. 219.

We have felt constrained to, at least briefly, consider the several propositions urged upon us with so much zeal and ability on behalf of the appellant, though we might well have contented ourselves with a reference to the able and elaborate opinion of the Court of Claims delivered by Justice Nott. 28 C. Cl. 173.

As we have reached the conclusion that the court-martial in question was duly convened and organized, and that the questions decided were within its lawful scope of action, it would be out of place for us to express any opinion on the propriety of the action of that court in its proceedings and sentence. If, indeed, as has been strenuously urged, the appellant was harshly dealt with, and a sentence of undue severity was finally imposed, the remedy must be found elsewhere than in the courts of law.

The decree of the Court of Claims is

*Affirmed.*