Ex parte GIVINS.

(District Court, N. D. Georgia. February 2, 1920.)

1. ARMY AND NAVY ⬅43—COMMANDER OF PERMANENT CAMP HAD POWER TO CONVENE GENERAL COURT-MARTIAL.

Under Eighth Article of War (Comp. St. § 2308a), authorizing the commanding officer of a district or body of troops to appoint a general court-martial when empowered by the President, a general court-martial called by the commander of a permanent camp, as authorized by General Order No. 56 of the War Department, issued June 13, 1918, by direction of the President, held lawfully convened.

2. ARMY AND NAVY ⬅47—RECORD OF COURT-MARTIAL NEED NOT SHOW ALL FACTS ESSENTIAL TO ITS EXISTENCE.

The record in a case tried by a court-martial need not show all the facts necessary to constitute it a lawful court.

3. ARMY AND NAVY ⬅47—JUDGMENT OF COURT-MARTIAL NOT REVIEWABLE ON HABEAS CORPUS.

A civil court in a habeas corpus proceeding cannot review the judgment of a court-martial for error.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. ARMY AND NAVY ☞47—PROOF OF JURISDICTION OF COURT-MARTIAL OVER DEFENDANT SUFFICIENT.

That a defendant was appointed, accepted his commission, and served as an officer in the army is sufficient proof that he was subject to military law.

5. ARMY AND NAVY ☞47—COURTS-MARTIAL HAD JURISDICTION OF TRIAL FOR MURDER AFTER ARMISTICE; "TIME OF PEACE."

The provision of article 92, Articles of War (Comp. St. § 2308a), that no person shall be tried by court-martial for murder committed within the geographical limits of the states of the Union in time of peace, *held* not applicable to any time between the declaration of war with Germany and the official conclusion of peace, although the place of war was not within the United States.

6. ARMY AND NAVY ☞48—DESIGNATION OF PLACE OF IMPRISONMENT PRESUMED LAWFUL.

Where the judgment of a court-martial, on conviction of a defendant for manslaughter, directed the kind and duration of his imprisonment as authorized by article 93, Articles of War (Comp. St. § 2308a), the place of confinement may be later designated by the War Department, and such designation on the commitment papers will be presumed to have been lawfully made.

7. ARMY AND NAVY ☞43—MEANING OF "DISTRICT" IN EIGHTH ARTICLE OF WAR.

The term "district," as used in Eighth Article of War (Comp. St. § 2308a), providing that, when empowered by the President, the commanding officer of any district may appoint general courts-martial, has no technical meaning, but includes the territory occupied by a permanent military camp.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, District.]

Petition by William J. Givins for writ of habeas corpus. Denied.

John S. Strahorn, of Annapolis, Md., for petitioner.

Hooper Alexander, U. S. Atty., and John W. Henley, Asst. U. S. Atty., both of Atlanta, Ga., and Francis E. McGovern, Judge Advocate, of Milwaukee, Wis., for the United States.

SIBLEY, District Judge. The return to the writ showed the applicant held in the United States penitentiary, Atlanta, Ga., since May 2, 1919, under sentence by a court-martial. The exhibited record shows the arraignment and trial of Capt. William J. Givins, Infantry, United States Army, on October 30, 1918, before a general court-martial convened at Camp Sevier, S. C., under Special Order No. 172, Headquarters, Camp Sevier, S. C., on a violation of the Ninety-Second Article of War (Comp. St. § 2308a), and specifications, in effect, of murdering a private on September 28, 1918, by premeditated shooting. There is a plea of "not guilty," and a finding of not guilty of the charge made, but guilty of violation of the Ninety-Third Article of War, with specifications amounting to manslaughter. The sentence is:

"To be dismissed the service and to be confined at hard labor at such place as the reviewing authority may direct for 10 years."

The sentence having been approved by the convening authority, and the record of the trial forwarded for the action of the President, under the Forty-Eighth Article of War, the following order is made thereon:

"In the foregoing case of Captain William J. Givins, Infantry, the sentence is confirmed, and will be carried into execution. Woodrow Wilson. The White House, 14th April, 1919."

The contentions of the applicant are:

(1) The court-martial was not legal, because convened by a camp commander; who could only call a special court-martial.

(2) The record of the trial does not show accused was an officer as alleged, nor in any manner amenable to trial by court-martial.

(3) The court-martial had no authority to try him for murder, because: (a) There was a time of peace in the United States when the crime was committed; and (b) the pleadings do not negative a time of peace.

(4) The sentence as promulgated did not include confinement in the United States penitentiary at Atlanta, or any other place.

[1] 1. The commander of a camp may, as such and on his own motion, call a special court-martial under the Ninth Article of War; but a special court-martial may not try a captain. Article 13. There is, however, in evidence General Order No. 56, promulgated by the Secretary of War under date of June 13, 1918, which so far as material is as follows:

"By direction of the President, the commanding officer of each of the following camps is empowered, under the Eighth Article of War, to appoint general courts-martial whenever necessary": Naming, among 33 camps, "Camp Sevier, Greenville, South Carolina."

Besides the inherent power of the commander-in-chief to direct the convening of courts-martial (Swaim v. United States, 165 U. S. 553, 17 Sup. Ct. 448, 41 L. Ed. 823), article 8 declares that general courts-martial may be appointed "when empowered by the President," by "the commanding officer of any district or of any force or body of troops."

[7] The term "district" has no technical military meaning, but includes the territory occupied by a permanent military camp, such as Camp Sevier. Moreover, the troops at the camp are ordinarily under the command of its commanding officer, so that the President might authorize such officer to convene general courts-martial, both as the commander of a district and of a body of troops.

[2] 2. The record is not defective in failing to refer to General Order 56 as authority for Special Order 172, by which the court was constituted. While courts-martial are special courts of limited jurisdiction, and have no presumptions to aid them (Runkle v. United States, 122 U. S. 543, 555, 7 Sup. Ct. 1141, 30 L. Ed. 1167; McClaughry v. Deming, 186 U. S. 49, 63, 22 Sup. Ct. 786, 46 L. Ed. 1049), still it is not requisite for an inferior court to spread upon the record of each case which it tries the full pedigree of its powers. Its record need not justify its existence generally, but should show the right to try the particular case. Otherwise, this record must have shown, not only the special order appointing its members and General Order 56, but also that the persons making these orders were really the commanding officer of Camp Sevier and the duly elected President of the United States. Obviously such things need not be made of record,

because they are to be judicially recognized. So a general order of the War Department is an army regulation, and is the law of the army, and will surely be judicially noticed by military courts, without either allegation or proof, and indeed by the civil courts as well. Jenkins v. Collard, 145 U. S. 547, 560, 12 Sup. Ct. 868, 36 L. Ed. 812; Caha v. United States, 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415; Gratiot v. United States, 4 How. 80, 117, 11 L. Ed. 884.

[3] 3. If by the second contention is meant that the evidence produced to the court-martial did not sufficiently show that applicant was a captain in the infantry of the United States Army, it must be replied that this court, on habeas corpus, is not a court of errors for the court-martial. The inquiry here is not whether that court decided rightly, but whether it could rightly decide at all. Johnson v. Sayre, 158 U. S. 109, 15 Sup. Ct. 773, 39 L. Ed. 914; Swaim v. United States, 165 U. S. 553, 561, 17 Sup. Ct. 448, 41 L. Ed. 823; Dynes v. Hoover, 20 How. 65, 15 L. Ed. 838; McClaughry v. Deming, 186 U. S. 49, 69, 22 Sup. Ct. 786, 46 L. Ed. 1049. Of course the applicant may here contend that he was not in fact a person subject to military law, and was not triable by court-martial, although that court might have adjudged otherwise, for that denies the jurisdiction in fact of the court, and its record cannot establish its jurisdiction, if indeed it had no authority to make a record.

[4] The evidence introduced here, however, shows that Givins, having served for several months as first lieutenant, was commissioned as a captain September 9, 1918, and accepted his commission September 25, 1918. The only reply made is that there is no proof he took the oath of allegiance at any time, which is said to be the touchstone of soldierhood. In re Grimley, 137 U. S. 147, 156, 11 Sup. Ct. 54, 34 L. Ed. 636. The oath may have been taken long since, and, being oral, may not be capable of convenient proof; but accepting a captain's commission, carrying the privileges and pay of that office, is amply sufficient proof that the petitioner was subject to military law. Article of War 2 (a).

[5] 4. Capt. Givins was arraigned for murder under article 92, and convicted of manslaughter, punishable under article 93. Under article 92 he could not be tried by a court-martial for murder "committed within the geographical limits of the states of the Union * * * in time of peace." It is said that at no time was there other than peace in the United States, and especially so after the armistice was signed with Germany, prior to the promulgation of the sentence in this case. If the right of a court-martial to try a military person under article 92 was intended to exist only in a place of war and in case the civil courts were closed, it would have been easy to say so; but a time of war is made the test, and it must be held that for military persons, at least, such a time continued from the date of the declaration of war by Congress until some formal proclamation of peace by an authority competent to proclaim it. The rapid movement of soldiers, causing the scattering of witnesses before the civil courts could act, as well as the necessity of firm discipline and full control over an army when on a war footing, are prime causes for the substitution of courts-

martial for civil courts in time of war. These causes existed at Camp Sevier, though the state of active operations was far removed.

If in exceptional cases a time of peace may come before official recognition of it, and before a demobilization of the armies, this is not such a case. And again it must be held that the failure of the court-martial's record to aver the crime to have been committed in a time of war is not fatal. On objection duly made it should have been alleged, and doubtless would have been; but, if the fact indeed existed, the failure of the record to state it is an irregularity in the record, and not a real want of jurisdiction in the court. If the jurisdiction really existed, in meeting a collateral attack it may be shown, either by the recitals of the record (which are neither conclusive nor exclusive evidence either way) or by aliunde proof. Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959. The point is of the less practical merit because the petitioner was not convicted under article 92, but under article 93, as to which a time of war or peace is immaterial. Under familiar rules, he went on trial, not only for a charge of murder, but also for every lesser crime included in the offense alleged. He was not tried for murder alone, but for manslaughter and assault also, and was lawfully convicted of manslaughter. Dynes v. Hoover, 20 How. 65, 79, 15 L. Ed. 838.

[6] 5. Article 93 authorized punishment "as the court-martial may direct." The court could properly prescribe the kind and duration of the punishment, as it did; but the place of its execution is under legislative control. Ex parte Karstendick, 93 U. S. 396, 400, 23 L. Ed. 889; Weed v. People, 31 N. Y. 465. The time and place of execution are no part of the judicial sentence. Schwab v. Berggren, 143 U. S. 442, 451, 12 Sup. Ct. 525, 36 L. Ed. 218; In re Cross, 146 U. S. 271, 13 Sup. Ct. 109, 36 L. Ed. 969; Ex parte Waterman (D. C.) 33 Fed. 29; O'Brien v. Barr, 83 Iowa, 51, 49 N. W. 68. They may, under various circumstances, be added or altered after the adjournment of the term of court. Re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149; State v. Kitchens, 2 Hill (S. C.) 612, 27 Am. Dec. 410; Ex parte Nixon, 2 S. C. 4; Bland v. State, 2 Ind. 608; State v. Cardwell, 95 N. C. 643; Kingen v. Kelley, 3 Wyo. 566, 28 Pac. 36, 15 L. R. A. 177; In re Bell, 56 Miss. 282; Mills v. Commonwealth, 13 Pa. 631. Else, the specified penitentiary being discontinued or destroyed, a discharge on habeas corpus would result. Other embarrassments would exist in the case of an army in the field. Capt. Givins has been lawfully sentenced to confinement at hard labor for 10 years, and should not be discharged until he has lawfully served it, or been pardoned or paroled.

Under Article of War 42 and under section 2 of the act of March 4, 1915 (38 Stat. 1084 [Comp. St. § 2458a]), he may lawfully be confined on this sentence in *any* penitentiary directly or indirectly under the control of the United States. Further, in promulgating this sentence, after confirmation by the President, the Acting Adjutant General, in his order accompanying the court-martial record, which was sent with the prisoner as a commitment, states that the United States penitentiary at Atlanta, Ga., had been designated as the place of con-

finement. It appears from the evidence that a recommendation of this place by the Secretary of War had accompanied the proceedings when submitted to the President for his confirmation, and there is proof that the designation of the place of confinement in this way, separately from the confirmation proper of the sentence, is the uniform practice of the War Department.

It is argued that it should be assumed that the President had orally directed this place of confinement in accordance with the sentence of the court, and not that the Adjutant General had done so. United States v. Page, 137 U. S. 673, 11 Sup. Ct. 219, 34 L. Ed. 828; United States v. Fletcher, 148 U. S. 84, 89, 13 Sup. Ct. 552, 37 L. Ed. 378; Wolsey v. Chapman, 101 U. S. 755, 770, 25 L. Ed. 915. And see, as to presumption of regularity as to the place designated for imprisonment, Ex parte Wilson, 114 U. S. 417, 421, 5 Sup. Ct. 935, 29 L. Ed. 89. A contrary view could only result in the petitioner's being held until the place could be designated. In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149. He would then lose credit for the time he has heretofore been improperly confined. If there is any objection to his present place of confinement, it can doubtless be changed on such showing as could be made to the President in making now an original designation.

The view will be adopted that the confinement has been and is lawful, and the writ of habeas corpus will be discharged, and the petitioner remanded to custody.