**KEPPLEMAN v. UPSTON et al.**
No. 28592.

United States District Court
N. D. California, S. D.
May 17, 1949.

Christin, Keegan & Carroll by Charles A. Christin, San Francisco, Cal., for plaintiff.

Frank J. Hennessy, United States Attorney, San Francisco, Cal., Joseph Karesh, Assistant U. S. Attorney, San Francisco, Cal., for defendant officers.

Frank A. Flynn, San Francisco, Cal., for civilian defendant.

HARRIS, District Judge.

Plaintiff, a sergeant in the Air Force, is suing defendants, officers in the Air Force of the United States, together with one civilian defendant, for damages in four counts.

In counts one and two, it is alleged that the military defendants were instrumental in effecting the false imprisonment of plaintiff, upon unfounded charges of embezzlement. In counts 3 and 4, it is alleged that all defendants engaged in a conspiracy against plaintiff, whereby they were responsible for plaintiff's false confinement.

Plaintiff commenced his suit in the Marin County Superior Court of the State of California. At the behest of the United States Attorney, defending the named officers, the matter was transferred to the United States District Court, in accordance with 28 U.S.C.A. §§ 1446 and 1447, and specifically as provided for in 10 U.S.C.A. § 1589, which section covers suits brought against army personnel in State Courts.

█ While the present removal to the District Court was a proper one, it should be noted that plaintiff could not have instituted suit in this Court in the first instance.[1] His cause of action and his right to relief are grounded upon State law.

Following removal of his case to this Court, plaintiff made a timely request for a jury trial. On the day set, a jury was selected and impanelled. Thereafter, counsel for both sides made their opening arguments, at the conclusion of which the United States Attorney presented to this Court a motion to dismiss on behalf of the defendants. It is this motion which is the subject for discussion.

The precise question confronting the Court at the outset is whether this tribunal has jurisdiction in such a properly removed case to grant the relief sought by plaintiff. The basis for plaintiff's suit is the allegedly false statements made by defendants, which led to his arrest, imprisonment, and charge of having embezzled certain army funds. His alleged damages stem from the action of defendants in making these statements.

For the District Court to entertain the cause and award plaintiff damages, it must of necessity examine into the propriety of the Court Martial charges preferred by defendants, and all of the proceedings leading up to the imprisonment of plaintiff, and his eventual release from confinement.

█ The situation presented herein is at once startling, anomalous and unusual. Traditionally, there is a line of demarcation between Civil and Military authority. Indeed, assuming that plaintiff had been convicted by the Military Court, and sought to review the matter before this Court on habeas corpus, our authority would be limited to the isolated issue of jurisdiction on the part of the military tribunal.[2]

Plaintiff has not challenged the jurisdiction of the Army authorities in instituting the proceedings under the 93rd Article of War, 10 U.S.C.A. § 1565. Were this Court, sitting with a jury, to assume jurisdiction, a chaotic condition would be created, without support either in authority or reason.

█ If the ultimate judgment of the Military Court cannot be reviewed, how can it be considered that this Court may inquire into the motives or consideration which entered into the lodging of the charges in the first instance? How, also, in a civil suit for damages, can the District Court grant relief which must, perforce, be based on the regularity of an Army Court Martial proceeding, the jurisdiction of which has not been challenged?

█ In the leading case of Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 138, the Court said, in part: "If the act complained of was done within the scope of the officer's duties as defined by law,

[1] Pendleton v. Bussey, D.C., 30 F. Supp. 211.

[2] Ex parte Benton, D.C., 63 F.Supp. 808, 809: "It is not questioned, as indeed it could not be by virtue of an unbroken line of authority, that civil courts cannot review the judgments of courts martial, on habeas corpus, if the military had jurisdiction to try the offender and if the sentence of the court or commission was within its power to pronounce. United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; Swaim v. United States, 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823; Mullan v. United States, 212 U.S. 516, 29 S.Ct. 330, 53 L.Ed. 632; Ex parte Mason, 105 U.S. 696, 26 L.Ed. 1213; Ex parte Reed, 100 U.S. 13, 25 L.Ed. 538; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236."

the policy of the law is that he shall not be subjected to the harrassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law." This language applies with equal force to both civilian and military officers performing their official duties.

The extent to which Courts will go in protection of public servants may be seen by the following statement in the O'Connor case: "It is now generally recognized that, as applied to some officers at least, even the absence of probable cause and the presence of malice or other bad motive are not sufficient to impose liability upon such an officer who acts within the general scope of his authority. And the fact that an overzealous or unprincipled officer may get a personal pleasure out of the suffering of a criminal is not sufficient to offset the interest of all the people in having the criminal brought to justice." That language is most compelling. See also the recent case of Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838.

■■■ Apart from, and in addition to the above Federal authorities which hold that this Court may not grant relief to plaintiff, Section 472 of the Military Code of the State of California[3] bars plaintiff from maintaining his present action, and thus removes the foundation for suit in both State and Federal Courts. The rationale of the section lies in the distinction which exists between protection of a man's civil rights arising while in the army, but unrelated to army discipline or Army Court Martial jurisdiction, and civil rights based on such proceedings. While an enlistee may not be deprived of a right under State or Federal law by the mere fact of his status as a soldier, he does not acquire additional rights of civil suit based on official army action taken with respect to him in line of duty. This is the reason for the enactment of Sec. 472, which disposes of the controversy between plaintiff and the military defendants. Cf. Armstrong v. Sengo, 17 Cal.App.2d 300, 61 P.2d 1188, which holds that military personnel are free from civil liability when performing official duties and obeying military orders. Such freedom from liability is absolute in wartime.

■■■ The Court may take judicial notice of the fact that the war emergency has not yet been declared at an end by the President of the United States.

■■■ With respect to the civilian defendant, the Court notes that such defendant is named only in the 3rd and 4th counts, which deal with the alleged conspiracy. In the very nature of things, a person cannot conspire with himself. Since the Court is prepared to make its order of dismissal as to the military defendants, it will accordingly make a similar order with respect to the civilian defendant.

It is ordered, on grounds of lack of jurisdiction, and defendants' immunity from liability, that the complaint be and it hereby is dismissed, with prejudice.

---

[3] "No officer by whom a military court is ordered or member of any such military court, or officer or person acting under its authority or reviewing the proceedings thereof or enforcing the process or sentence thereof shall be liable civilly or criminally for any act done in such capacity." Sec. 472 of the Military Code, enacted 1935.