(Slip Opinion)

# Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation

The President's constitutional duty to "take Care that the Laws be faithfully executed" authorizes him to designate acting Board members to temporarily manage the Inter-American Foundation and the United States African Development Foundation.

March 14, 2025

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

As part of his efforts to reduce the size of government, President Trump issued Executive Order 14217, which instructed two agencies that allocate foreign assistance—the Inter-American Foundation ("IAF") and the United States African Development Foundation ("ADF")—to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." Exec. Order No. 14217 (Feb. 19, 2025). We were advised that the President removed the Board members that headed those agencies after they failed to adequately comply with that directive. The statutes that govern the foundations permit the President to remove Board members at will but provide no mechanism to designate acting Board members to continue to carry out the foundations' statutory functions pending the appointment of new members.

You asked us whether, in these circumstances, the President has authority to designate acting Board members to supervise the foundations' operations temporarily before the President can appoint permanent Board members with the Senate's advice and consent. Consistent with advice this Office has provided for decades, we confirmed that he does. When no statute says otherwise, a President's responsibility to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, grants him the concomitant authority to designate acting officers through whom he can temporarily maintain the constitutional chain of supervision over an organization created by Congress to perform executive functions. The President needs time to appoint new Board members through the advice-and-consent process—particularly in the season of a presidential transition. He need not leave the foundations leaderless in the meantime.

This memorandum memorializes the basis for the advice we gave you.[1]

## I.

The IAF and ADF are two of a number of small agencies created by Congress and headed by boards composed of individuals whom the President appoints, by and with the advice and consent of the Senate. 22 U.S.C. § 290f(a), (g); *id.* § 290h-1(a); *id.* § 290h-5(a)(1).

The IAF "was created in 1969 . . . as an experimental U.S. foreign assistance program." *Inter-American Foundation*, U.S. Gov't Manual, https://usgovernmentmanual.gov/ (last visited Mar. 7, 2025). The IAF's organic act structures the agency as a "body corporate" and tasks it with undertaking or sponsoring research, programs, and projects that aid development in countries in the Western Hemisphere. *See* 22 U.S.C. § 290f(a)–(c). Congress has vested the power to manage the IAF in a nine-member Board appointed by the President, by and with the advice and consent of the Senate. *Id.* § 290f(g). Board members do not enjoy any protection from at-will removal by the President—a power which is presumptively incident to his power to appoint. *See Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103, 103 (2001) ("*Civil Rights Commission*"). Each Board member generally serves a six-year term and is eligible for reappointment. *See* 22 U.S.C. § 290f(g) (allowing a Board member to serve the remainder of their predecessor's term if it has not expired). When a member's term expires, the member "shall continue to serve until his successor is appointed and shall have qualified." *Id.* The statute does not say whether or how the President may fill vacancies on the Board with acting members.

The ADF was established in 1980 "to enable the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives." African Development Foundation Act, Pub. L. No. 96-533, § 504(a), 94 Stat. 3151, 3152 (1980). Congress structured it as a "body corporate" and tasked it with making grants, loans, and loan guarantees to African entities and groups. 22 U.S.C. §§ 290h-1(a), 290h-3(a)(1). Like the earlier IAF statute, the ADF's organic act vests

---

[1] Our advice was limited to use of the President's authority to designate acting members of the Boards of IAF and ADF. We did not examine other agencies.

management power in a seven-member Board appointed by the President, by and with the advice and consent of the Senate, to serve six-year terms (or the remainder of their predecessor's term, if it had not expired). *Id.* § 290h-5(a)(1)–(2). If an ADF Board member's term expires, they too "continue to serve until a successor is appointed and shall have qualified." *Id.* § 290h-5(a)(2). And like the statute governing the IAF Board, the statute governing the ADF Board does not restrict the President's authority to remove Board members at will or address acting service during Board vacancies. *See id.* § 290h-5.

On February 19, 2025, President Trump sought to align the IAF and the ADF with his executive priorities by ordering that they "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." Exec. Order No. 14217. We understand that, after determining that the Board members were not adequately complying with his order, the President removed most of the members of each Board on February 24 and the remainder on February 26.

On February 28, you asked us whether the President has authority to designate acting Board members notwithstanding the absence of specific statutory authorization to do so. Consistent with the Office's longstanding view, we advised that the President's constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, conveys that authority. Later that day, the President designated Peter Marocco, the Director of the Office of Foreign Assistance at the Department of State, as an acting Board member and Chairman of each Board.

## II.

It is well established that the "[e]xecutive has powers not enumerated in the statutes—powers derived not from statutory grants but from the Constitution. . . . These constitutional powers have never been specifically defined, and in fact cannot be, since their extent and limitations are largely dependent upon conditions and circumstances." *Request of the Senate for an Opinion as to the Powers of the President "in Emergency or State of War,"* 39 Op. Att'y Gen. 343, 347 (1939). Such authority is most commonly exercised "in the foreign affairs arena." *Clinton v. City of New York*, 524 U.S. 417, 445 (1998) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936)). But pockets of such inherent authority exist in the domestic sphere as well. *See, e.g.*, *Youngstown Sheet*

*& Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring); *Swaim v. United States*, 165 U.S. 553, 557–58 (1897); *accord Dames & Moore v. Regan*, 453 U.S. 654, 673–75 (1981) (upholding presidential action under a combination of a statutory authorization and inherent presidential power).

The Constitution requires the President to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Our Office has consistently advised that this obligation conveys upon the President the concomitant power to name acting officials when necessary to fulfill his constitutional duties, at least where no statute precludes it. *See Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 151–53 (1977) ("*Home Loan Bank Board*"); Memorandum for Neil Eggleston, Associate Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of an Acting Staff Director of the United States Commission on Civil Rights* at 2 (Jan. 13, 1994); *Civil Rights Commission*, 25 Op. O.L.C. at 104.

We have never comprehensively defined the scope of the President's authority to designate acting officials to presidentially appointed positions in the face of statutory silence. But the President's authority to do so is consistent with the Framers' demand for "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997); *The Federalist* No. 70, at 427 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) (noting that without such unity, the people lose their "two greatest securities" against public malfeasance, the "restraints of public opinion" and the "opportunity of discovering" any abuse of trust). This unity of leadership promotes "[d]ecision, activity, secre[c]y, and d[i]spatch." 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1414, at 283 (1833). At the same time, because the President cannot carry out the full scope of "the executive power" on his own, courts have endorsed the view that "as part of his executive power," the President must be able to "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926); *see also, e.g., Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010).

We have therefore advised that, at least where that authority is not limited by statute, the President may act to designate an official to temporari-

ly perform the duties of a presidentially appointed position where leaving the position vacant would have "the effect of seriously impeding [the agency's] functions," *Home Loan Bank Board*, 1 Op. O.L.C. at 152–53, including the agency's function of carrying out statutory obligations consistent with presidential directives, *cf. Civil Rights Commission*, 25 Op. O.L.C. at 105 & n.3; *Youngstown Sheet & Tube Co.*, 343 U.S. at 637 (Jackson, J., concurring). This limited authority allows the President to fulfill his constitutional responsibility to ensure that an agency performs its statutorily required functions, which persists even during the time it takes for the President to appoint agency leadership through the advice-and-consent process.

Although questions about the President's inherent power to designate officials to act in the place of a Senate-confirmed officer can and do arise throughout an Administration, they are particularly important during periods of presidential transition. At that time, "[a] president is responsible for about 4,000 political appointments, 1,200 of which require [S]enate confirmation."[2] That reality presents a challenge. On the day he enters the office, the President must seek to appoint personnel to implement the agenda that he was elected to execute. At the same moment, he must assume supervision over agencies with leadership ranks that are either vacant or filled with persons not of his own choosing.

The President cannot ease the burden of this constitutional duty by delegating his authority to appoint. As this Office has previously explained, "the President's power to appoint officers requiring Senate confirmation must be exercised by the President and may not be delegated." *Assignment of Certain Functions Related to Military Appointments*, 29 Op. O.L.C. 132, 134 (2005) ("*Military Appointments*"). That is because "[t]he power to appoint and remove [is] discretionary in character," *Departmental Clerks—Delegation of Power*, 21 Op. Att'y Gen. 355, 356 (1896), and only the President is empowered to exercise that discretion, Memorandum for the Attorney General, *Re: The Power of the President to Delegate Certain Functions* at 407 (n.d. ca. 1955) ("[T]he power of removal is incident to the power of appointment. The latter power not being delegable, neither is the former." (citation omitted)). At the outset of an

---

[2] *Presidentially Appointed Positions*, Ctr. for Presidential Transition (Apr. 14, 2021), https://presidentialtransition.org/wp-content/uploads/sites/6/2020/12/Presidentially-Appointed-Positions.pdf.

Administration, it may take considerable time to exercise that discretion as the President must find, vet, prepare, and then personally appoint these many officials once the Senate has provided its advice and consent.

## III.

Here, we advised that the President's inherent powers under the Take Care Clause would extend to designating acting members of the Boards of IAF and ADF to manage the agencies temporarily.

To start, no statute specifically governs the President's authority to designate acting Board members for either the IAF or ADF. Although the foundations' authorizing statutes impose certain criteria for whom the Senate will consider for service, they do not provide for the designation or appointment of temporary Board members. 22 U.S.C. § 290f(g); *id.* § 290h-5(a)(1).

Nor does the Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. §§ 3345–3349d, govern the President's authority here. The FVRA expressly excludes from its reach officers who are "appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that (A) is composed of multiple members; and (B) governs an independent establishment or Government corporation." *Id.* § 3349c(1). Because the Boards of both the IAF and ADF manage Government corporations and their members are appointed by the President with the Senate's advice and consent, *see* 22 U.S.C. § 290f(a), (g), (n); *id.* § 290h-1(a); *id.* § 290h-5(a)(1), the FVRA does not limit the President's authority to designate acting Board members. The FVRA underscores this by expressly stating that "[s]ections 3345 through 3349b of the Act shall not apply" to positions on boards like those that govern the foundations. 5 U.S.C. § 3349c(1). Under this express exclusion, the mechanisms for acting service set out in 5 U.S.C. § 3345 do not apply to vacancies on such multi-member boards. The strict time limits for acting service described in 5 U.S.C. § 3346 do not apply. Section 3347, which directs that the FVRA is generally "the exclusive means" for filling vacant positions at other agencies, does not apply. *Id.* § 3347. Nor does any of section 3348, including that statute's prohibition on the performance of duties vested exclusively in the vacant office by anyone other than an acting officer serving "in accordance with sections 3345, 3346, and 3347" or the agency head. 5 U.S.C. § 3348(b), (d). Ultimately, the

FVRA nowhere dictates how the President must designate temporary officers to fill vacancies on a multimember board like those that run the IAF and ADF. And under our Office's longstanding advice, that statutory silence does not impliedly preclude the President from making an acting designation. *See, e.g.*, *Civil Rights Commission*, 25 Op. O.L.C. at 104.

To be sure, subsections 3348(b)(1) and (d)(1) arguably could be read to suggest that Congress placed agencies led by multimember boards outside the scope of the FVRA in order to preclude the President from designating acting Board members. Subsection 3348(b)(1) states that an office requiring presidential appointment and Senate confirmation "shall remain vacant" "[u]nless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347." 5 U.S.C. § 3348(b)(1). And subsection 3348(d)(1) provides in turn that "an action taken by" someone "not acting under section 3345, 3346, or 3347 . . . in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force and effect." *Id.* § 3348(d)(1). That language could be interpreted as stripping acting Board members of the position and power necessary to perform Board functions and duties if their service is not pursuant to and consistent with the FVRA.

But sections 3348(b)(1) and 3348(d)(1) "must [be] place[d] . . . in context"—including in the context of each other—and "interpret[ed] . . . to create a symmetrical and coherent regulatory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000). Here, reading sections 3348(b)(1) and (d)(1) to preclude the President from designating and empowering acting Board members under any circumstances would clash with the language of section 3349c, which provides that section 3348 does not apply to vacancies described in section 3349c. Moreover, it is unlikely that Congress would alter the constitutional balance of powers in so subtle a manner. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 496, 506–07 (2023); *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). Rather, Congress would "clearly specif[y] the procedure to be used in handling a vacancy." *Status of the Vice Chairman of the Federal Reserve Board*, 2 Op. O.L.C. 394, 396 (1978). Under the usual constitutional balance, the President enjoys the power to designate acting Board members to ensure that his ability to manage agencies is not seriously impeded while permanent appointees are nominated and confirmed. *See Home Loan Bank Board*, 1 Op. O.L.C. at 152–53. Nothing in section

3348(d)(1) or any other section of the FVRA disrupts that usual balance, clearly or otherwise.

Instead, we read section 3348(b) and 3348(d)(1) to work together to ensure that, where the FVRA applies, it provides the exclusive method by which an individual may fill an office in an acting capacity, unless one of the alternative methods for temporary service described in 5 U.S.C. § 3347(a) is available. Section 3348(b)(1) prevents anyone except the agency head from performing the exclusive functions and duties of the vacant office; section 3348(d)(1) invalidates any action taken by someone other than a properly serving acting officer (or the head of the agency) in the performance of those functions and duties. We do not read these two subsections to indirectly override the express exclusion in 5 U.S.C. § 3349c or otherwise foreclose the President's ability to act through his constitutional authority when Congress has not provided a method for naming acting officers. Instead, by passing an exclusion as broad as that found in section 3349c, Congress declined to delineate the bounds of acting service in positions for which it has deemed the FVRA inapplicable, thereby "enabl[ing] . . . measures on independent presidential responsibility." *Youngstown Sheet & Tube Co.*, 343 U.S. at 637 (Jackson, J., concurring).[3]

The foundations are Executive Branch entities that exercise executive power under the supervision of the President. 22 U.S.C. § 290f(a), (g); *id.* § 290h-1(a); *id.* § 290h-5(a)(1). One of the primary functions of both agencies is to fund development projects with a combined budget of nearly $100 million. *See* Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, tit. III, 138 Stat. 460, 746. The power to control this

---

[3] Under this reading, the cross reference to section 3349c in section 3348(d)(1) is not surplusage. The reference to section 3349c clarifies that the FVRA reaches all offices filled through the advice-and-consent process that are not subject to the carve-out contained in section 3349c. But even if the cross reference was surplusage, "[l]awmakers sometimes repeat themselves—whether out of a desire to add emphasis, a sense of belt-and-suspenders caution, or a lawyerly penchant for doublets (aid and abet, cease and desist, null and void)," *King v. Burwell*, 576 U.S. 473, 502 (2015) (Scalia, J., dissenting)—particularly when any reasonable interpretation of the statute would result in some amount of surplusage, *see, e.g.*, *Bufkin v. Collins*, 145 S. Ct. 728, 742 (2025) ("[W]hen both interpretations involve the same redundancy, the canon against surplusage simply does not apply." (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013))). For the reasons discussed above, the tension in the statute makes this one of those instances.

funding reflects a significant exercise of sovereign power on behalf of the United States—particularly as these foundations' statutory functions implicate foreign affairs, an area long understood as being within the President's core constitutional functions. *See Application of the Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*, 46 Op. O.L.C. __, *6–8 (Oct. 28, 2022) (discussing some of the President's constitutional foreign affairs powers).

If both the IAF and the ADF were left without any Board members, the foundations' accountability while carrying out their statutory functions in accordance with the policies set by the President would be seriously impeded. Under the governing statutes, it is the Boards that direct how the foundations exercise the executive power delegated to the foundations. 22 U.S.C. § 290f(e)(5), (i); *id.* § 290h-4(a)(7); *id.* § 290h-5(a)(1). Accordingly, to satisfy Article II, the Boards must be staffed by members who are "accountable" to the President through the threat of removal. *Free Enter. Fund*, 561 U.S. at 483. And, if there are no Board members, then there is no one whom the President can hold to account for the foundations' exercise of executive power.

If the President could not task a politically accountable official to fill the agencies' leadership positions in an acting capacity, the President functionally could not exercise his Take Care authority with respect to the IAF and ADF. That is particularly true here, as the current vacancies were occasioned by what we understand as the Boards' failure to adequately comply with the President's directives. *Cf. English v. Trump*, 279 F. Supp. 3d 307, 327, 329 (D.D.C. 2018) (finding that "it poses a serious constitutional problem" under the Take Care Clause for "the CFPB's Director [to have] unchecked authority to decide who will inherit the potent regulatory and enforcement powers of that office, as well as the privilege of insulation from direct presidential control, in the event he resigns"). That loss of presidential control over the leadership of the foundations and the executive power that they exercise would seriously impede each foundation's ability to function in accordance with the direction of the Chief Executive.

Although Congress has not expressly provided for how leadership of these foundations would be staffed in a period of transition with numerous Board member vacancies (in the FVRA or otherwise), the President's acting designations here are consistent with Congress's acknowledgment in the FVRA that the Executive Branch might require more flexibility to

fill vacant positions during a presidential transition. In particular, the FVRA provides for a reset of the acting-service period for positions to which it applies during the sixty-day period following the inauguration of a new President. *See* 5 U.S.C. § 3349a(b); *Federal Vacancies Reform Act's Application to a Vacancy for Which Prior Presidents Submitted Multiple Nominations*, 46 Op. O.L.C. __, *2–3 (Oct. 21, 2022). As we have recognized, precisely because "[a] new presidential administration will have hundreds of Senate-confirmed positions to fill, many of which may well have been vacant for substantial periods of time in the prior administration," this extension both "encourag[es] prompt nominations and enabl[es] continuity of acting service in Senate-confirmed positions." *Id.* at *10.

True, the President's designation of a single acting Board member stops short of fully constituting the Board. But a Board's less-than-full membership does not mean that its "power is suspended so that it can be exercised by no delegee." *New Process Steel v. NLRB*, 560 U.S. 674, 684 n.4 (2010). To the contrary, our office has "assume[d] that many, especially routine, functions of the Board [that has lost a quorum] have been delegated to subordinate officers," save for "important decisions that [the Board] has reserved to itself." *Home Loan Bank Board*, 1 Op. O.L.C. at 150; *accord Amended and Restated Bylaws of African Development Foundation*, § 3.04(e) (approved Oct. 13, 2009) (specifying that "[a] majority of the Directors holding office shall constitute a quorum for the transaction of business"). Temporarily designating a single acting Board member on each Board will thus enable the President to exert some control over the foundations, their employees, and their exercise of the executive power during this time of transition.

## IV.

This is not to say that Mr. Marocco's acting service may continue indefinitely. Where there is no express statutory limit on the length of an acting official's tenure, we have advised that the President should submit a nomination for that position to the Senate "[w]ithin a reasonable time after the occurrence of" the vacancy. *Continuing Service of Deputy Director of OMB as Acting Director During Vacancy*, 1 Op. O.L.C. 287, 287 (1977) ("*OMB*"). Since we provided our advice on the acting designa-

tions, we have been informed that the President has nominated one individual to both Boards and may nominate additional individuals.

Our view is that acting designations in these circumstances are well within the scope of the President's inherent authority to designate acting officials to "keep the Government running." *Legality of Designation of Certain Acting Officials by the Secretary of Energy*, 2 Op. O.L.C. 113, 117 (1978). In other contexts, we have advised that aspects of acting service not directly regulated by statute should be measured by their reasonableness, including consideration of "the specific functions being performed by the [a]cting [official]; the manner in which the vacancy was created (death, long-planned resignation, etc.); the time when the vacancy was created (*e.g.*, whether near the beginning or the end of a session of the Senate); whether the President has sent a nomination to the Senate; and particular factors affecting the President's choice . . . or the President's ability to devote attention to the matter." *OMB*, 1 Op. O.L.C. at 290 (citations omitted). Here, the President's intention to promptly make nominations (which has now been partially effectuated), the pressures associated with the early weeks of a fresh presidential Administration, and the immediate actions needed from the foundations to ensure compliance with presidential directives counsel in favor of these acting designations.

## V.

Consistent with our Office's longstanding position, the President has the authority to temporarily designate acting members of the IAF and ADF Boards of Directors.

LANORA C. PETTIT
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
