## FITCH v. HIATT.

### No. 125.

District Court, M. D. Pennsylvania.

July 6, 1942.

No appearance for petitioner James E. Fitch.

Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa., for respondent William H. Hiatt.

JOHNSON, District Judge.

This is a petition for writ of habeas corpus by James E. Fitch, a prisoner at the United States Penitentiary, Lewisburg, Pennsylvania. It appears that the petitioner was tried by a general court-martial at Fort McClellan, Alabama, charged with a violation of the Ninety-Third Article of War, 10 U.S.C.A. § 1565, and was found guilty of the specification and charge; and was, inter alia, dishonorably discharged from the service and sentenced to be confined at hard labor for a period of three years and a United States Penitentiary was designated as the place of confinement. He was confined at Fort McClellan, Alabama, from September 30, 1938 to March 23, 1939, and then transferred to the United States Penitentiary, Atlanta, Georgia, on March 23, 1939, and subsequently transferred to the United States Penitentiary at Lewisburg, Pennsylvania, and released on what is commonly designated "Conditional Release" with 286 days good time deduction. This consisted of:—18 days military good time covering the period of confinement at Fort McClellan, Alabama, 230 days good time computed under the provisions of 18 U.S.C.A. § 710 covering the period of confinement at a United States Penitentiary, plus 38 days industrial good time under the provisions of 18 U.S.C.A. § 744h. At the time of his release, the petitioner signed and agreed to the Certificate of Conditional Release and the conditions thereof. Subsequent thereto and while he was on parole, the United States Board of Parole revoked the parole attached to conditional release and returned him to the United States Penitentiary, Lewisburg, Pennsylvania, where he is now confined.

The petitioner's contention is that he is unlawfully confined for the reason that he, being a military prisoner, was entitled to what is commonly designated "Military Good Time" which is greater than that provided for civil prisoners under 18 U.S.C.A. § 710, and that being such military prisoner the provisions of 18 U.S.C.A. § 716b with reference to conditional release could

not apply, and that the United States Board of Parole was therefore without power to revoke such parole and return him to the United States Penitentiary. The Secretary of War is authorized under the provisions of 10 U.S.C.A. § 1457b to establish a system of parole for prisoners confined in the United States disciplinary barracks and its branches, and has done so in Army Regulations 600-415, but it will be noted that this is limited to confinement in disciplinary barracks and branches thereof. Section 9 of Army Regulation 600-415 provides the termination of parole at the termination of his term or terms of confinement imposed, as reduced by such abatement for good conduct as he may have earned. Such good conduct deduction is provided by AR 600-375, Section 1, paragraph 15f(1), and which provides the allowances in abatement, but specifically provides:—

"f. Allowance in abatement; forfeiture thereof.

"(1) General prisoners.—General prisoners, other than those confined in penitentiaries, will be allowed in abatement of their terms of confinement * * *. A general prisoner serving sentence in a penitentiary will be allowed the abatement authorized for convicts in that penitentiary."

■ In this case the military authorities, as part of the sentence imposing the punishment in the case, designated that the service thereof should be in a United States Penitentiary. The incidents of such sentence, including the length of time to be served and the amount of deductions for good conduct to which he would be entitled, were therefore fixed by and at the time of the imposition of such sentence. There is no question that in the instant case the military reviewing authority had jurisdiction to order service of the petitioner's sentence in a United States Penitentiary. 10 U.S.C.A. § 1513; 10 U.S.C.A. § 1452; Ex parte Givins, D.C., 262 F. 702.

■ Therefore, even though the effect of a penitentiary sentence would be that the prisoner would have less good time deduction than provided under military good time, and even though by reason thereof he would be on parole during the period of release under good time deduction, whereas there is no such provision in connection with what is commonly designated "Military Good Time", nevertheless these would be incidental results of and form a part of and be the effect of the sentence as imposed. 18 U.S.C.A. § 716b specifically provides with reference to a prisoner at the United States Penitentiary, as follows: "Any prisoner who shall have served the term or terms for which he shall after June 29, 1932 be sentenced, less deductions allowed therefrom for good conduct, shall upon release be treated as if released on parole and shall be subject to all provisions of law relating to parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence."

The language of this statute, together with AR 600-375, Section 1, paragraph 15f (1), definitely settles the proposition that the petitioner was entitled only to the credits for good time provided in 18 U.S.C.A. § 710, instead of the more accelerated credits allowed for military prisoners confined in military barracks under sentence, and would also as a natural sequence thereto be subject to the provisions of 18 U.S.C.A. § 716b, which applies by its terms to "any prisoner" confined in a United States Penitentiary. Under such circumstances, a prisoner released with good time deductions would automatically come within the provisions of 18 U.S.C.A. § 716b, and be subject to the jurisdiction and supervision of the United States Board of Parole. The petitioner, in addition thereto, also voluntarily signed and accepted at the time of his release the said Conditional Release Certificate placing him under such supervision.

It becomes unnecessary to consider the effect of his dishonorable discharge and whether or not the same made him a civil prisoner rather than a military prisoner and as such subject to supervision until the expiration of his maximum term.

■ It follows therefore that the statutory provisions authorizing service of a military sentence in a United States Penitentiary and the Army Regulations (in such case) which provide for the same allowance for good time to which civil prisoners are entitled compel the conclusion that all provisions of law applicable to civil prisoners shall be applied impartially to all military prisoners confined in a penitentiary except insofar as specific matters are retained by such statutes as 10 U.S.C.A. § 1457a, by which authority is vested in the Secretary of War to remit unexecuted portions of sentences.

In this case, under a three year sentence the petitioner served approximately 28 months before becoming eligible for release; whereas he would have been released after serving approximately 22 months had his sentence been served in disciplinary barracks.° The method of computing military good time is shown in AR 600-375, Section 1, paragraph 15f(1). Thus, the sentencing body, by designating the place of imprisonment, virtually increased the period of imprisonment by 6 months, and it also resulted in placing the prisoner on parole during such good time period after his release from the penitentiary; and this was, as a matter of fact, an element of additional punishment, but this enters into the picture whenever a military tribunal orders sentence executed in a penitentiary. It is a part of the sentence, and a part of the punishment meted out. It follows when a military tribunal orders its sentence executed in a penitentiary, the prisoner automatically becomes entitled to any advantages and subject to any disadvantages which accrue to the civilian prisoner.

The petition for writ of habeas corpus is accordingly dismissed and the rule issued thereon discharged.