**Wade Mosby JACKSON, Plaintiff,**

v.

**Neil H. McELROY, Secretary of Defense, Defendant.**

**Civ. A. No. 5158–55.**

United States District Court
District of Columbia.

June 9, 1958.

258

Walter H. E. Jaeger and Edgar P. Reese, Washington, D. C., for plaintiff.

William R. Rafferty, Asst. U. S. Atty., for District of Columbia, Washington, D. C., for defendant.

CHRISTENSON, District Judge.

The plaintiff asks this Court to determine through declaratory judgment under 28 U.S.C. sec. 2201 that his sentence by general court-martial was invalid. The case turns upon whether the convening authority was an "accuser" as defined by section 1(11) of the Uniform Code of Military Justice, 50 U.S.C.A. sec. 551(11)*.

Now on the retired list but then an officer of the Fourth Marine Regiment of the Third Marine Division stationed at Nara, Japan, plaintiff was convicted in December, 1953, of violating Articles 92, 93, 98 and 133 of the Uniform Code of Military Justice, 50 U.S.C.A. secs. 686, 687, 692, 727**. He was sentenced to

forfeit pay of $350 per month for a period of twelve months and to lose 250 unrestricted numbers. The sentence was approved by the Commanding General, R. H. Pepper, who had convened the court, and by the Judge Advocate General, who declined to refer the case to a Board of Review as he had the discretion to do.[1] The Secretary of the Navy, although reducing the sentence, approved the findings and conviction and found them to be supported by law.

Having exhausted, without satisfaction to him, remedies available through the military, plaintiff filed his complaint here, in which he challenged the jurisdiction of the general court-martial which tried him because of alleged disqualification of General Pepper to convene it, and also asserted failure of the convening authority to accomplish a fair and impartial review, and the refusal of the Department of the Navy to afford plaintiff appellate review in alleged denial of due process. Motions were filed by the defendant for summary judgment and dismissal of the complaint. Each was denied by Judge Morris, who held that there existed a genuine issue of fact for trial: whether General Pepper, the convening authority, was also the "accuser"[2].

Considerations of comity should incline me to follow Judge Morris' decision as the law of the case unless clearly persuaded that as to jurisdiction it was erroneous[3]. I am not so persuaded and, indeed, find general recognition among the authorities that the question of jurisdiction may be inquired into

* Now 10 U.S.C. § 801(9).

** Now 10 U.S.C. §§ 892, 893, 898, 933.

1. 50 U.S.C.A. sec. 653; now 10 U.S.C. § 866.

2. Judge Morris said, among other things: "I fully agree that a civil court does not have jurisdiction to review the actions of a court-martial where the court-martial has jurisdiction of the person and of the offense, and imposes a sentence authorized by law. * * * But here the contention is that the court-

martial which tried and convicted the plaintiff was not lawfully constituted and, therefore, did not have jurisdiction of the person of the plaintiff even though he was a member of the armed forces. Unquestionably this Court has the duty of determining the facts as to whether or not the Court does have jurisdiction, and, as there is a genuine issue as to such jurisdictional facts, I must deny defendant's (motions) * * *."

3. Pickwick-Greyhound Lines v. Shattuck, 10 Cir., 1932, 61 F.2d 485.

nigeria

here [4]. Nor, in view of the recent case of Harmon v. Brucker [5], indicating a negative answer need we pause to debate the old question of whether habeas corpus is the only proceeding in which it is competent to raise the question of jurisdiction. It will be assumed not only that the question of jurisdiction may be inquired into but that it should be done in this proceeding.

Plaintiff's original contentions that the sentence is vulnerable because of failure of the convening authority to accomplish a fair and impartial review and the refusal of the Department of the Navy to accord plaintiff review through a Board of Review, except as these are connected with the matter next mentioned, do not require comment except to note that no point was made of them at the trial and no irregularity can be perceived.

Plaintiff's major position is founded on the contention that General Pepper was an "accuser" and thus incompetent to convene a valid court-martial. It is expressly provided in The Manual for Courts-Martial that it is unlawful for an "accuser" to convene a general court-martial for the trial of a person so accused [6], and this is implicit in the Uniform Code of Military Justice, which in Article 22, 50 U.S.C.A. sec. 586(b)†, provides in respect to those who may convene a general court-martial, "When any such commanding officer is an accuser,

the court shall be convened by superior competent authority, and may in any case be convened by such authority when deemed desirable by him." Article 1(11) of the Uniform Code of Military Justice, 50 U.S.C.A. Sec. 551(11), contains the following definition:

> " 'Accuser' shall be construed to refer to a person who signs and swears to charges, to any person who directs that charges nominally be signed and sworn by another, and to any other person who has an interest other than an official interest in the prosecution of the accused."

The plaintiff claims that General Pepper had an interest other than an official interest in the prosecution of the accused because he displayed personal animus, because the offenses charged against Jackson arose under such circumstances as to constitute a personal affront to General Pepper, and because he directed the charges to be sworn to by another.

■ There is no indication here from the testimony of plaintiff, that of the General, or anyone else that General Pepper entertained personal animus against plaintiff. In fact, some of the evidence gives reason to infer that the General's connection with the prosecution was an unpleasant task for him, reluctantly undertaken in the performance of his duties. I find that there was no

4. Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691; In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; Swain v. United States, 165 U.S. 553, 17 S.Ct. 448, 41 L. Ed. 823.

5. March 3, 1958, 355 U.S. 579, 78 S.Ct. 433, 435, 2 L.Ed.2d 503. The Supreme Court, among other things, said: " * * * Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers. (Citing authorities.) The District Court had not only jurisdiction to determine its jurisdiction but also power to construe the statutes involved to determine whether the respondent did exceed his

powers. If he did so, his actions would not constitute exercise of his administrative discretion, and, in such circumstances as those before us, judicial relief from this illegality would be available. Moreover, the claims presented in these cases may be entertained by the District Court because petitioners have alleged judicially cognizable injuries. Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 159, 160, 71 S.Ct. 624, 642, 95 L.Ed. 817 [847, 848], and see Army Regulation 615–360, par. (7)."

6. The Manual for Courts-Martial, United States, 1951, carried into effect by Executive Order 10213, dated February 8, 1951.

† Now 10 U.S.C. § 822(b).

actual personal animosity on the part of General Pepper toward the plaintiff.

It is further urged that unusual actions of the Commanding General in ordering the arrest of the plaintiff pending disposition of charges, relieving plaintiff of his assignment and restricting his consultation with superior officers, indicate malice, or establish constructive malice at least sufficient to vitiate the court-martial. The evidence shows that while such arrests were unusual, they were not unprecedented. A reference to the code itself discloses discretion on the part of commanding officers to do what was done. That the order of arrest was not delivered in accordance with the code [7] would not indicate personal animus any more than it would indicate mere carelessness in discharging official duties. Of course, the validity of the arrest as such is not an issue.

Plaintiff relies further upon the principle that actual ill will or even implied ill will is not the only disqualification, but that the convening authority must be so entirely unconnected with the transactions giving rise to the charges that reasonable persons will not impute to him any personal feeling or interest in the matter [8].

It is said that the Commanding General when he convened the court-martial was smarting from a real or supposed abuse by Jackson of the records of his command and thus was personally interested from this standpoint. Pointed to are the circumstances reflected in the record of United States v. Charles E. Ingalls [9] out of which these charges against plaintiff grew. Attention also is directed to a letter of reprimand which General Pepper directed to one Lieutenant Colonel Chester L. Christenson because of his part in the Ingalls affair. The record was such as naturally would cause concern to any commanding officer; but such concern would not necessarily be anything other than an official one. There is no showing here that any interest evidenced or felt by General Pepper was other than properly official. There is the additional consideration that the Ingalls decision was not issued by the Board of Review until after General Pepper had written his letter with respect to additional charges and had convened the court.

The reprimand of Christenson, following the findings of the Board of Inquiry, which was appropriate under the circumstances, did not disqualify the General from convening the court-martial any more than appropriate official action in one case in and of itself disqualifies a commanding officer from taking official action in related cases. In the Gordon case, the house of the general who convened the court-martial had been involved in an attempted burglary by the same defendant then being prosecuted for the burglary of another house, and the general had been interviewed in the investigation of the burglary. His presumed personal concern for his own house and personal belongings clearly is different than a purely official interest of a commanding officer that general laws or orders of the service be obeyed.

It is most strenuously and persuasively insisted that General Pepper was an "accuser" because he was a person who directed that charges be nominally signed and sworn to by another within the purview of Article 1(11) of the code, supra.

Upon the completion of the investigation of the Board of Inquiry which had

7. 50 U.S.C.A. secs. 563(c), 564, now 10 U.S.C. §§ 809(c), 810.

8. United States v. Gordon, 1 USCMA 255, 2 CMR 161.

9. Decided November 19, 1953 by the Board of Review, U. S. Navy, in which the Board commented: "The actions of Lieutenant Colonel Jackson in fabricating the purported record of trial * * * constituted bare faced fraud on both the officer exercising general court-marital jurisdiction and upon the Board * *."

recommended that two charges be filed against the plaintiff [10] General Pepper directed the following memorandum to Colonel Harold D. Hansen, president of the Board of Inquiry, who signed the original charges and who responded to the memorandum and enclosure as indicated by the endorsement:

"Headquarters

3D Marine Division, FMF

c/o Fleet Post Office

San Francisco, California

17/327/tbd
A17-1/1
54967
27 Oct 1953

From: Commanding General

To: Colonel Harold D. Hansen, 04266/9908 USMC

Subj: Recommendation for trial by general court-martial; case of Lieutenant Colonel Wade M. Jackson 06486 USMC

Ref: (a) Para 35, MCM, 1951

Encl: (1) Copy of record of proceedings of Court of Inquiry convened by my order of 5 Oct 1953
(2) Recommended charges against subject-named officer

1. Inasmuch as it is considered that enclosure (2) contains more appropriate charges against the subject-named officer, enclosures (1) and (2) are submitted herewith in order that you, as president of the Court of Inquiry, may swear to the recommended charges and specifications as set forth in enclosure (2).

/s/  R. H. Pepper
R. H. Pepper"

---

"21/200/tbd
A17–1/1
27 Oct 1953

First Endorsement

From: Colonel Harold D. Hansen 04266/9908 USMC
To: Commanding General

1. Return complied with

Defense Exhibit "C" (TBD)

/s/  Harold D. Hansen
Harold D. Hansen

Certified True Copy

Ted H. Collins
Capt. USMC
Trial Counsel"

10. Violation of the Uniform Code of Military Justice, Article 134, by wilfully and unlawfully falsifying an official record, to-wit: the court-martial record in the case of Charles E. Ingalls, and violating the Uniform Code of Military Justice, Article 93, by mistreating Ingalls, a person subject to his orders, by striking him on the thigh. 10 U.S.C. § 893, 934.

The enclosure transmitted with the foregoing memorandum specified two additional violations, modified one of the old charges and repeated the other [11].

Plaintiff says that the president of the Board of Investigation after being advised by a legal officer and after having heard the evidence adduced before the Board arrived at his own judgment concerning what charges should be filed, which were the original two charges. It is said that by directing one of the charges to be revised and two additional charges signed, General Pepper became a person directing that charges nominally be signed and sworn to by another and therefore, an "accuser" disqualified to convene the general court-martial.

The defendant in opposition to the latter construction calls attention to the form of the communication and particularly to the language that the new charges " * * * are submitted herewith in order that you * * * *may* swear to the *recommended* charges * * *." (Emphasis added.) It is true that the words are permissive and refer in terms to recommended charges. Yet I am impressed with plaintiff's argument that rarely do general officers issue commands or orders in form as such, and by almost universal acceptance their expressed wishes are interpreted by their subordinates as orders. Treating this memorandum to Colonel Hansen as a direction that the new charges be sworn to rather than a mere suggestion that the propriety of this should be considered by Colonel Hansen, does such direction render General Pepper an accuser?

Before reaching the ultimate question, having already laid the basis for an answer to a related and preliminary question, I will dispose of it by indicating my view that actually the General's memorandum was not indicative of any preconceived personal notions involving personal animus or any individual pre-judgment of the plaintiff. It was a routine matter in implementation of a suggestion previously received from his staff legal officer [12]. Section 0314c(2). Naval Supplement, Manual for Courts-Martial, 1951, referred to in the memorandum from the Staff Legal Officer to General Pepper, is as follows:

"(2). Trial by court-martial.—If the convening authority considers that trial by court-martial is warranted, and in the absence of receipt

---

11. The revised charges as submitted with General Pepper's letter were: 1. Violation of the Uniform Code of Military Justice, Article 92, in that Jackson violated a lawful general regulation by withholding from those persons authorized to have access to them certain official records; 2. Violation of the Code, Article 93, by mistreating Charles E. Ingalls; 3. Violation of the Code by knowingly and intentionally failing to comply with Article 37 thereof in that he unlawfully interfered with the convening authority in his action upon the special court-martial record in the case of Charles E. Ingalls by coercing and wrongfully influencing the said Lt. Col. Christenson to wrongfully approve and submit to the supervisory authority; and, 4. Violating the Code, Article 133, by wilfully and unlawfully falsifying an official record, said conduct being unbecoming an officer and a gentleman. 10 U.S.C. §§ 837, 892, 893, 933.

12. In a memorandum dated 27 Oct. 1953 from the Staff Legal Officer to the Commanding General with a caption reference to "par. 35c, MCM, 1951", the Staff Legal Officer pointed out that the allegations of the original offenses were warranted by the evidence (before the Board of Inquiry) but added: " * * * (1) The evidence adduced, however, indicates that Charge I, as shown by enclosure (2), should more properly be alleged as a violation of Article 133, Uniform Code of Military Justice [10 U.S.C. § 933]. 2. Accordingly, it is recommended: a. That the charges and specifications set forth in enclosure (3) be submitted to the accuser in order that he may swear to these charges. b. That in the event that the accuser signed the charges set forth in enclosure (3), the entire matter be referred to the accused in accordance with the provisions of Section 0314c(2), Naval Supplement, Manual for Courts-Martial, 1951, to determine if he desires further to cross-examine witnesses or to offer any new evidence in his behalf; after which, it is recommended that the charged be referred for trial by general court-martial."

of appropriate sworn charges, he should prefer charges as the accuser and refer the matter to a superior competent authority unless trial by court-martial has been ordered by other competent authority. The court of inquiry having investigated the case, the preliminary inquiries required by Pars. 32b and 33a, MCM, are not necessary prerequisites to trial. Further, if a general court-martial is contemplated, the court of inquiry will suffice as a pretrial investigation required by Article 32 of the code providing: (a) the accused was designated a party to the inquiry and had the opportunity to avail himself of his rights as such; and (b) the accused, after being informed of the charge does not demand further investigation of the case. In the event of such a demand, opportunity will be given the accused to recall witnesses for further cross-examination and to offer any new evidence in his own behalf. See Par. 33e(1), MCM. This may be done by additional proceedings of the court of inquiry or by referring the case to a single investigating officer, to hear and record such additional evidence. In either event, the proceedings of such further investigation shall be appended to the original record of the court of inquiry. If a general court-martial is awarded, the action of the convening authority thereon will indicate that this procedure was used in lieu of the pretrial investigation required by Par. 34, MCM."

█ Plaintiff says that General Pepper manifested his role as accuser by disregarding the recommendation implicit in the Staff Legal Officer's memorandum, which plaintiff interprets as that in the absence of receipt of appropriate sworn charges from Colonel Hansen, the General should prefer charges himself as the accuser and refer the matter to a superior competent authority for the convening of the court-martial. It is true that the reference cited in the Staff

Legal Officer's memorandum outlines such a procedure in the event the convening authority prefers charges as the accuser. Subdivision (b), however, directs that in the event of new charges (even though the convening authority is not the accuser) opportunity will be given the accused to call witnesses for further cross-examination and to offer any new evidence in his own behalf; that this may be done by additional proceedings of the Court of Inquiry, and that if a general court-martial is awarded the action of the convening authority thereon will indicate that this procedure was used in lieu of the pretrial investigation required by other provisions.

The Staff Legal Officer's memorandum, itself, shows that the reference was to this latter procedure when it was recommended that " * * * the entire matter be referred to the accused in accordance with the provision of Section 0314c(2) * * *." It is clearly demonstrated that the Staff Legal Officer had no purpose by citing the reference to suggest that an acceptance of his recommendation would constitute the General an accuser, and require him to refer the matter to superior authority.

Hence, considering that the General acted strictly in compliance with the recommendation of his Staff Legal Officer without animus but that in view of the command relationship his memorandum to Colonel Hansen constituted a direction that the new charges be signed, we return to the controlling inquiry of whether such direction rendered General Pepper the accuser as a matter of law.

The answer is dependent upon two considerations: what is the effect of changes in specifications directed by a commanding officer and, specifically in this connection, what is the function of the word "nominally" as used in Article 1(11), Uniform Code of Military Justice in the context: " * * * who directs that charges nominally be signed and sworn by another * * *."

That a commanding officer may direct changes in charges and specifications be-

264

lieved by him needed to bring about conformance with the evidence is clearly indicated by 50 U.S.C.A. sec. 605, Article 34, Uniform Code of Military Justice.†† This article does not directly specify, however, the effect of such direction on the question of whether the commanding officer becomes an "accuser" as a result:

"§ 605. Advice of staff judge advocate and reference for trial (article 34).

"(a) Before directing the trial of any charge by general court-martial, the convening authority shall refer it to his staff judge advocate or legal officer for consideration and advice. The convening authority shall not refer a charge to a general court-martial for trial unless he has found that the charge alleges an offense under this chapter and is warranted by evidence indicated in the report of investigation.

"(b) If the charges or specifications are not formally correct or do not conform to the substance of the evidence contained in the report of the investigating officer, formal corrections, and such changes in the charges and specifications as are needed to make them conform to the evidence may be made."

Counsel for the plaintiff reads Article 1(11) as if the word "nominally" had been omitted. While he does not expressly affirm it, it is by necessary implication thereby implied that any person who directs that a charge be signed and sworn to by another is an accuser as a matter of law, no matter what the circumstances of that direction may be, and irrespective of the fact that the one who actually signs the charge acts in accordance with his own knowledge and beliefs. While I am impelled to find that the memorandum from the commanding officer amounted to a direction that the charges be signed and sworn to, rather than a mere recommendation for further consideration of the problem on the part

of Colonel Hansen, I must also find that the revised and new charges were appropriate in view of the evidence of which Colonel Hansen had knowledge. It is apparent that Colonel Hansen in good faith believed that it was an appropriate direction and that the modified and new charges were justified by the evidence. In other words, although acting pursuant to direction, the propriety of the new charges was within Hansen's own knowledge and he signed those new charges not merely nominally for the commanding general but in good faith acting for himself as an accuser. If a direction by a commanding officer that charges be signed by another as a matter of law constitutes the one giving such direction an accuser, these other considerations would not matter.

The Articles of War did not define "accuser". However, they expressly prohibited an accuser from sitting as a member of a court (article 4) and from convening a general court (article 8).* In the text of the Manual for Courts-Martial, U. S. Army, 1949, "accuser" was defined in this way (p. 4):

"An accuser either originates the charge or adopts and becomes responsible for it * * *. Action by a commander which is merely official and in the strict line of his duty cannot be regarded as sufficient to disqualify him."

(p. 57):

"Accuser.—An officer who has signed and sworn to the charges in a particular case is necessarily an accuser in the case. Although the person who signs and swears to the charges is ordinarily the only accuser in the case, that is not always true. There may be another or others who are the real accusers. * * *"

In United States v. Jewson, 1 USCMA 652, the convening authority ordered an investigation, the results of which were submitted to him, together with recommendations. He thereupon referred them

†† Now 10 U.S.C. § 834.

* 10 U.S.C. §§ 804, 808.

to an officer on his staff legal department who signed as accuser. It did not appear definitely that the charges were in final form when submitted to the officer for signature as accuser. The Court held that the convening authority was not the accuser and quoted with approval the following from Winthrop, Military Law and Precedents, 2d Ed., 1920 reprint:

" ' * * * Where, upon the facts of the supposed offense being reported to him, and appearing to call for investigation by court-martial, he has, as commander, directed some proper officer, as the commander of the regiment or company of the accused, or his own staff judge advocate, to prepare the charges (indicating or not their form), or has approved or revised charges already prepared, he is not to be regarded as an accuser in the sense of the article, his action having been official and in the strict line of his duty. * * * ' "

At the hearing before the Committee on Armed Services of the House of Representatives it was suggested by one witness that under the wording of the original House draft of the code a commanding officer who would otherwise in fact be an accuser could order a subordinate to prefer charges by name only, irrespective of his own knowledge or conviction (p. 810, 816 HH). Felix Larkin, who was executive secretary to the committee on the proposed code, testified that such was not the intent or effect of the bill (p. 849, 850 HH)[13]. The House reported the bill out unchanged. The idea apparently was rejected that the mere command position or the functioning of the commanding officer in his official capacity should disqualify him from con-

vening a court. The committee used the following language (p. 8):

"Able and sincere witnesses urged our committee to remove the authority to convene courts-martial from 'command' and place that authority in judge advocates or legal officers, or at least in a superior command. We fully agreed that such a provision might be desirable if it were practicable, but we are of the opinion that it is not practicable. We cannot escape the fact that the law which we are now writing will be as applicable and must be as workable in time of war as in time of peace, and, regardless of any desires which may stem from an idealistic conception of justice, we must avoid the enactment of provisions which will unduly restrict those who are responsible for the conduct of our military operations. * * * "

The Senate, on the recommendation of the Judge Advocate General of the Army (p. 265 SH) included the "nominally" clause. The wording apparently was used to avoid any implication that mere official direction that charges be sworn to by another would make the commanding officer an accuser even though the subordinate signed the charges on his own responsibility and not merely nominally. The Senate version was enacted into law.

In United States v. Grow, 3 USCMA 77, construing UCMJ 1951, the Secretary of the Army had directed an investigation and approved the charges and specifications. He then forwarded the charges to the accused's commanding officer for action. The commanding officer ordered an investigation and thereafter convened a court. It was contended that the Secretary of the Army was the accuser. The Court held otherwise, stating among oth-

---

13. " * * * But the complaint in this connection was that a commander who was disqualified could order a subordinate to prefer the charges. Well, that I think overlooks a present regulation providing that no commander can order any subordinate to prefer charges at all.

"The persons who prefer the charges or refer them to trial and appoint courts are required to do so on their own initiative and on their own independent judgment and not at the order of anybody else and this definition does not change that at all. I do not have any fears on that score."

er things, that: "Military law on the subject as developed over a period of approximately one hundred years, was adopted." There was applied the test of whether a reasonable person could conclude that the convening authority's interest in the case was anything but official.

In the case of United States v. Smith, 8 USCMA 178, 23 CMR 402, the Court of Military Appeals said that the convening authority is not disqualified on the theory that in directing the amendment of charges he had become a private prosecutor. It was pointed out that the convening authority is charged with deciding the nature and severity of the charges to be tried and the type of court to decide them. The Court stated:

"* * * But trial counsel's failure to carry out all the legal requirements necessary to perfect the record does not justify a conclusion that the convening authority should be disqualified under a theory that he ordered the charges to be amended and, therefore, had the regular proceedings been carried out, any person signing the charges would have been his alter ego. We have already shown the true accuser could not have been found to occupy that status."

The decision then considered the problem of whether the circumstances indicated that the convening authority had an interest other than an official interest in the prosecution:

"All the evidence before the convening authority merely confirms a conclusion that he acted upon his legal officer's advice to have the specification amended to set out the true offense. The recommendation was appropriate, called for by the facts, and apparently not actuated by any desire to overcharge an offense. * * * Merely because the convening authority arrived at that conclusion and directed action be taken to frame the charges properly does not prove personalized interest. By statute, he is charged with the duty of deciding the nature

and severity of the offenses to be tried and the type of court to decide the issues. Therefore, unless there is evidence showing some departure from that statutory role, his action in ordering the accused tried on a greater offense than the first one alleged is not of such a personalized nature as to disqualify him from further performing his official duties."

▪ While decisions of the United States Court of Military Appeals are not binding upon this Court, they are persuasive. The reasoning in the decision last mentioned, added to its presumptive correctness in the field of military law, entitles it to considerable weight.

I have concluded for the reasons heretofore discussed that plaintiff is not entitled to relief which he seeks here. Considering this memorandum decision as sufficient to constitute findings of fact and conclusions of law herein, the clerk is directed to enter judgment of "no cause of action" in favor of the defendant and against the plaintiff, costs not to be allowed.