**Joseph P. KAUFFMAN, Plaintiff,**

v.

**The SECRETARY OF the AIR FORCE, Defendant.**

**Civ. A. No. 1456–65.**

United States District Court
District of Columbia.

June 2, 1967.

Rabinowitz & Boudin, New York City, Forer & Rein, Washington, D. C., for plaintiff.

Garvin L. Oliver, Department of Justice, Washington, D. C., for defendant.

## OPINION

McGARRAGHY, District Judge.

Plaintiff seeks to have a court-martial conviction and sentence declared void due to alleged violation of his constitutional rights. He also requests restoration to active duty with full rank and seniority from June 30, 1964, and all back pay and allowances which he would have received if he had not been discharged. The case is before the court on cross motions for summary judgment, and defendant's alternative motion to dismiss.

In September, 1960, plaintiff was a captain in the United States Air Force. He completed a tour of duty in Greenland, and received orders authorizing a thirty day delay en route for purposes of travel in Europe, before reporting to his next duty station at Castle Air Force Base, California.

During the course of his travels, plaintiff purchased a train ticket for a trip from Hamburg, Germany to West Berlin. As the train was travelling through East Germany, East German officials passed through plaintiff's car checking the travel papers of the passengers. Plaintiff presented his travel orders and military identification card. Subsequently, he was removed from the train by the East German authorities and detained over night.

The following day he was driven to East Berlin, where he was interrogated, through an interpreter, regarding a variety of personal and military matters. He was again detained over night and the interrogation continued through the following day.

At the conclusion of the second day of interrogation, he was granted leave to go to West Berlin for the night, upon giving his word that he would return to East Berlin the next day. He did return on October 1, 2 and 3, for further sessions with the East Germans.

On October 3, he was asked to sign an agreement to supply information to the East German Political Secret Service. Upon his refusal, the East Germans wrote the name and address of Klara Weiss, a resident of West Berlin, in plaintiff's pocket notebook. He was told that Klara Weiss would be his contact for communicating information to East Germany.

Plaintiff left West Berlin on October 4, 1960, and proceeded to Castle Air Force Base, California.

In June, 1961, a person named Gunter Maennel defected from East Germany, and volunteered his services to the United States authorities in West Germany. Maennel disclosed to the United States

authorities that he was one of the East German agents who had interrogated Captain Kauffman.

An investigation of Maennel's allegations was initiated and pursued by the Air Force Office of Special Investigations (OSI). On November 7, 1961, plaintiff was assigned to Travis Air Force Base on temporary duty. That night, OSI agents broke into his off-base residence in Atwater, California, in the vicinity of Castle Air Force Base, and proceeded to search the premises. Subsequent searches were conducted on November 8, 10, and 28, 1961.

Based on the information gathered in these searches, the OSI procured a search warrant for plantiff's home from a United States Commissioner who was not apprised of the prior entries. Upon executing the warrant, in the company of a Deputy United States Marshal, the OSI agents seized the notebook containing Klara Weiss' name and address, and they photographed other documents establishing plaintiff's presence in Germany in September and October, 1960.

Plaintiff was taken into custody by Air Force authorities on November 19, 1961, and confined in the base hospital at Castle Air Force Base. The OSI placed a listening device in a room adjoining the room where plaintiff was confined and where he had access to a telephone. Plaintiff's communications to his lawyer and others interested in the case were recorded. There was also an Air Policeman posted at his door who eavesdropped on his conversations and reported his observations.

Plaintiff alleges that during interrogations by OSI agents, he was urged to discharge the attorney of his choice, Benjamin Dreyfus of San Francisco, because Dreyfus had represented persons with purported Communist affiliations and because he was active in the National Lawyers Guild.

The defendant contends that the agents did not specifically urge plaintiff to discharge his attorney, but that they made comments about the lawyer's background and told plaintiff it was his choice to make. Defendant concedes that this is not a material issue of fact.

In December, 1961, the plaintiff was transferred, over his objection, to Weisbaden Air Base, Germany, for pretrial investigation and trial. Plaintiff urges that there was no compelling reason for conducting the trial in this locale, and that it was particularly prejudicial to him because of the international crisis which attended the erection of the Berlin wall.

Further, plaintiff alleges that the transfer was prejudicial because counsel of his choice, Benjamin Dreyfus, was unable to leave his practice for the period required to complete the proceedings in Germany. It is noted from the record that plaintiff was represented throughout the court-martial and appellate proceedings by distinguished counsel who previously had served as a judge on the Court of Military Appeals for ten years and also had been a member of the Supreme Court of Utah.

In the court-martial proceeding, four charges were lodged against plaintiff alleging violation of various articles of the Uniform Code of Military Justice (UCMJ).

The first charge alleged a conspiracy with persons known to be members of the East German Secret Police to communicate information relating to the national defense of the United States.[1]

The second charge alleged violation of an Air Force Regulation in that plaintiff failed to notify his superiors of attempts by persons known to be representatives of the Union of Soviet Socialist Republics and of the so-called German Democratic Republic to secure information contrary to the security and best interests of the United States, and to cultivate him socially.[2]

The third charge alleged that plaintiff agreed to return to East Germany in

---

1. Article 81, UCMJ.

2. Air Force Regulation 205–57, dated July 2, 1959.

1963 for training by the Secret Service and to obtain and communicate certain information.[3]

The fourth charge alleged communication to Gunter Maennel, as representative of the Union of Soviet Socialist Republics and the so-called German Democratic Republic, of information relating to the defense of the United States.[4]

The court-martial began on April 10, 1962, and was terminated on April 18, 1962. Plaintiff was convicted as charged, except for specification 1 of Charge II, which was dismissed prior to trial. On April 18, 1962, he was sentenced to dismissal from the service, forfeiture of all pay and allowances, and confinement at hard labor for twenty years.

Pursuant to the provisions of the UCMJ, the court-martial record was reviewed by the Staff Judge Advocate of the convening authority, and approved by the convening authority. The record was then forwarded to the Judge Advocate General of the Air Force for review by a Board of Review.

The plaintiff, by his attorneys, filed an extensive assignment of errors before the Board of Review. After considering the case, the Board of Review set aside the finding of guilty on Charge IV and reduced the period of confinement imposed from twenty years to ten years.

Plaintiff then filed a petition for review by the United States Court of Military Appeals which was granted.

The Court of Military Appeals rendered its decision on December 13, 1963, United States v. Kauffman, 14 U.S.C. M.A. 283, 34 C.M.R. 63. Charges I and III were dismissed, and Charge II was affirmed, the Court finding that the conviction on the latter charge was not affected by the errors alleged. The court referred the case back to the Judge Advocate General for a reassessment of sentence by a Board of Review.

A Board of Review conducted a hearing on the matter of resentencing, and on February 13, 1963, the sentence was reduced to dismissal from the service, total forfeiture of pay and allowances, and confinement at hard labor for two years.

Thereafter, plaintiff, by his attorneys, filed another petition for review by the Court of Military Appeals regarding the reassessment of sentence. That petition was denied.

On June 25, 1964, the reassessed sentence of the Board of Review was approved by the Secretary of the Air Force, except that an administrative discharge under other than honorable conditions, effective June 30, 1964, was substituted for the dismissal from service.

Plaintiff did not exercise his right to petition for a new trial, and his right to do so expired on June 22, 1963, one year after approval of the court-martial sentence by the convening authority.

Plaintiff has served the period of imprisonment imposed and is no longer in custody.

Plaintiff here contends that fundamental constitutional rights were violated during the OSI investigation and the court-martial proceedings, and that as a result the court-martial was ousted of its jurisdiction to try and sentence him. Therefore, he asks this court to declare the court-martial void.

Several points are raised in this case which plaintiff claims violated his fundamental constitutional rights. The first is that he was required to answer questions regarding Charge II on cross-examination over his objection, and in violation of his right against self-incrimination. Specifically, he was asked whether he reported the contacts by foreign agents to his superiors.

The right against self-incrimination as contained in Article 31, UCMJ, has been included in the Manual for Courts-Martial (1951) par. 149(b), with an interpretation that a defendant may testify as to some charges, and elect not to testify as to others. This is broader than the

---

3. Article 133, UCMJ.

4. Article 134, UCMJ.

scope of the Fifth Amendment to the Constitution, in that a person subject to court-martial may preclude cross-examination as to certain aspects of a case by electing not to testify on that charge. Under the civilian counterpart, a defendant who elects to testify is subject to any relevant and material cross-examination.

The plaintiff, at his court-martial, elected to testify as to Charges I, III and IV, but not as to Charge II. He contended at the court-martial and throughout the military appellate procedures that cross-examination on Charge II violated his right against self-incrimination. This contention was considered at each stage of the military proceedings, including those before the Court of Military Appeals, and it was consistently held that this distinctly military provision was not violated.

Plaintiff also asserts that the searches and seizures previously mentioned violated his rights under the Fourth Amendment, and the Fifth Amendment because of the incriminating nature of the items seized. He claims that his Fifth and Sixth Amendment rights were violated by eavesdropping on his conversations with his attorney during his confinement at Castle Air Force Base.

Several matters which occurred during the court-martial are raised to support the claim that plaintiff was denied a fair trial.

Counsel for plaintiff at the court-martial discovered that the prosecutor was utilizing a signalling system during the examination of Gunter Maennel. At that time a motion for a mistrial was denied, and the offending spectator was excluded from the proceedings.

A line of questioning on cross-examination of plaintiff regarding Communist literature in his brother's personal library in New York was objected to as irrelevant. The objection was overruled. Plaintiff concedes that this is not a constitutional issue, but contends that its prejudicial effect goes to the fundamental fairness of the trial.

Plaintiff cites the transfer of the case to Weisbaden, Germany, mentioned earlier in this discussion, as further evidence of the basic unfairness of the trial.

The defendant points out that plaintiff alleged in his complaint that he was denied the right of a public trial. This is not pressed in plaintiff's motion for summary judgment, nor was it presented in the Court of Military Appeals. It was considered, however, by the Board of Review, which found that spectators were excluded for a brief period while there was a discussion on declassifying certain information. The Board of Review concluded that no testimony or evidence was offered during this period, and that there was no denial of the right to a public trial.

All of these issues were raised during the court-martial and military appellate proceedings. The constitutional questions were carefully considered, and the Court of Military Appeals noted in its opinion that there were "massive and deliberate violations of appellant's constitutional rights under the Bill of Rights, during the course of the investigation by the Office of Special Investigations." [5] It was on this ground as well as on the merits that the Court dismissed Charges I and III.

However, with respect to Charge II, the Court stated:

> "In that the record contains multiple errors calling for the reversal and dismissal of two of the charges before us and that the remaining charge is not, and could not be, affected by such conduct, we proceed no further as to violation of Constitutional rights." [6]

Charge II was thereupon affirmed.

Plaintiff also alleges that the Air Force Regulation under which he was convicted on Charge II is repugnant to

---

5. United States vs. Kauffman, supra, p. 287.

6. Ibid, p. 288.

the Fifth Amendment in that compliance with it would result in self-incrimination, and that as applied to plaintiff in particular, it would require him to disclose violation of other regulations regarding restrictions on travel to Berlin, Germany.

This matter was considered by the Court of Military Appeals and the regulation was found to be a reasonable and necessary provision for the discipline and security of the Air Force. That Court concluded that the regulation is valid, and that its application to plaintiff did not violate his rights.

It is against this background that this court comes to the question of whether it has jurisdiction and, if so, to what relief, if any, is the plaintiff entitled.

The traditional separation of the military and civil systems of law is well rooted in our history. The necessity for this separation was recognized by the Framers of the Constitution when they entrusted Congress with power "To make Rules for the Government and Regulation of the land and naval Forces". Art. I, Section 8. The power to execute the laws regulating the military was conferred upon the President under Article II of the Constitution.

In the exercise of its regulatory power over the military, Congress has never given the civilian Article III courts jurisdiction to review courts-martial proceedings. When Congress revised the military law after World War II by enacting the Uniform Code of Military Justice, it included a stringent finality clause. Article 76 of the UCMJ, 10 U.S.C. § 876, provides in pertinent part:

> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval,

review or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all * * * courts * * * of the United States * * *.

This provision was interpreted in Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146, to mark the terminal point for proceedings within the courts-martial system. The Supreme Court declared that it could not be read to suspend the Constitutional writ of habeas corpus which has always been available to test the jurisdiction of courts-martial in the civil courts.[7]

The UCMJ also established the United States Court of Military Appeals to provide for civilian review of courts-martial proceedings. The court consists of three persons selected from civil life and appointed by the President with the advice and consent of the Senate.[8]

■ It was intended to be the court of last resort in courts-martial cases, except for the right of habeas corpus.[9]

The creation of the Court of Military Appeals exemplifies the conscientious effort by Congress to provide a fair and impartial system of appellate review of courts-martial.

In view of the traditional separation of the military and civil jurisprudence, and the appellate procedures provided to military men, civil courts have limited their habeas corpus jurisdiction to an inquiry into the jurisdiction of the courts-martial in each case.

Considerations of military discipline and good order, which are beyond the ken of civil courts have led to a less stringent application of the principles of due process to military judicial proceedings. Consequently, Article III courts diligently seek to determine whether the defendant in a court-martial proceeding is subject to military law, e. g.

---

7. Ex parte Vallandigham, 1 Wall. 243, 68 U.S. 243, 17 L.Ed. 589.

8. Article 67, UCMJ; 10 U.S.C. § 867.

9. H.Rept. No. 491, 81st Cong., 1st Sess., p. 7.

Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148.

■ In habeas corpus proceedings initiated by military prisoners, the civil courts have historically limited their function to a determination that the court-martial had jurisdiction of the person and the offense, and had power to impose the sentence.[10]

■ The plaintiff in this case is no longer in custody, and therefore, habeas corpus does not lie. His suit is for a declaratory judgment. This presents the question of whether this court has any jurisdiction whatsoever.

The defendant contends that aside from the power of civil courts to examine the limited question of the jurisdiction through a writ of habeas corpus, there is no other remedy here in the face of the finality clause of the UCMJ. It is also asserted that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not enlarge the jurisdiction of the federal district courts but only grants an additional remedy where jurisdiction exists.

Plaintiff claims that the violation of his constitutional rights was such that the court-martial was ousted of jurisdiction. Therefore, plaintiff argues, he does not seek a review of the court-martial proceedings, but a declaration that the verdict is void for lack of jurisdiction.

The power of the civil court to review court-martial proceedings when the jurisdiction of the court-martial is challenged is discussed in several cases and while such power has been indicated, it is obvious that the extent of the judicial review is limited.

In the case of Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301, cert. den. 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed. 2d 108, it was contended that the District Court lacked jurisdiction where suit was brought for mandatory injunction, and for other relief, to compel the Judges of the United States Court of Military Appeals to review on the merits the record of appellant's conviction, it being contended that a petition for writ of habeas corpus is the only means of bringing a court-martial case before a civil court. The Court of Appeals said:

"Assuming as we do that the District Court, on the complaint of one not in confinement, may consider the constitutional validity of the review provisions of the Court of Military Appeals applicable to his case, the 'clear conviction' of unconstitutionality, held by the Supreme Court in Ex parte Quirin, supra n. 4, to be required before a civil court will upset the action of a military tribunal, fails to emerge."

In the case of Jackson v. McElroy, D.C., 163 F.Supp. 257, which was a suit for declaratory judgment to pass upon the validity of the plaintiff's sentence by a general court-martial, the Court "assumed not only that the question of jurisdiction may be inquired into but that it should be done in this proceeding".

Also, in the very recent decision of the United States Court of Appeals for this Circuit of Levy v. Corcoran, No. 20,972, which was a petition for writ of mandamus against the District Court and in which the petition for writ of mandamus was denied, Circuit Judge Tamm expressed the view that the petitioner had an adequate remedy at law and after pointing to his available appellate proceedings through the United States Court of Military Appeals, Circuit Judge Tamm said:

"In addition, there is available to this petitioner, in due course and if he is convicted, the right of appeal to the civil courts through habeas corpus *or other appropriate proceedings.*" (Italics supplied.)

In the same case, Circuit Judge Leventhal pointed out the availability of appellate procedure to the Court of Military Appeals and he referred to the relationship of the civil courts and military tribunals which he described as "a relationship which looks to habeas corpus or *kindred remedies* as the technique by which the civil courts exercise such lim-

10.  e. g. Dynes v. Hoover, 20 How. 65, 61 U.S. 65, 15 L.Ed. 838.

ited intervention as may be proper in the cases taken before military tribunals." (Italics supplied.)

■ In the light of the foregoing, this court assumes that it does have the limited power to inquire into whether the court-martial had jurisdiction over the defendant.

Plaintiff questions the jurisdiction of the court-martial only on the ground that it was ousted of jurisdiction because of violation of his constitutional rights.

In addition to the aforementioned allegations by plaintiff regarding the fairness of his trial, he raises four other points which were not specifically assigned as errors in the military proceedings: that the key prosecution witness wore a disguise while testifying; that OSI agents advised him to dismiss his civilian counsel; that spectators in the courtroom were searched for weapons creating a hostile atmosphere; and that the prosecution sought to deny him information necessary to his defense on the ground that it was classified.

In the case of Burns v. Wilson, 346 U.S. 137, at p. 144, 73 S.Ct. 1045, at p. 1050, 97 L.Ed. 1508, it was stated:

"It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims."

Further, in its opinion, the Court states that the issues raised in the *Burns* case were pressed at the trial, or were available for exploration there.

This court finds that the issues raised by plaintiff here were thoroughly examined during the military proceedings, or were known to plaintiff during those proceedings. The concern of the Court of Military Appeals regarding violation of plaintiff's constitutional rights is exhibited by its harsh condemnation of

such practices, and the dismissal of two of the charges against plaintiff. The conviction under the remaining charge was found to be untainted.

A case recently decided by the Court of Military Appeals, in which the *Miranda* rule [12] was made applicable to courts-martial proceedings, displays that court's continuing awareness of the constitutional requirements of due process. Judge Kilday in his concurring opinion stated:

"[I] can but again reiterate my certainty that this court is bound by the Supreme Court on questions of constitutional import; that our actions in this area are reviewable by civil tribunals; that any other view adopted by us raises the specter of possible harm to an accused with no lasting benefit to the government; and that finality of litigation occurs only if we face every such issue squarely." [13]

At the conclusion of the majority opinion in the *Burns* case, supra, 346 U.S. p. 146, 73 S.Ct. p. 1050, the Court stated, "Petitioners have failed to show that this military review was legally inadequate to resolve the claims which they have urged upon the civil courts."

■ Upon consideration of the entire record in this case, and with the enlightenment of oral argument by counsel on their motions, the court is of the opinion that the issues raised by plaintiff were fully and fairly considered at the court-martial and throughout the military appellate proceedings, or were available for exploration therein.

Accordingly, the plaintiff's motion for summary judgment is denied, the defendant's motion to dismiss is denied, and the defendant's alternative motion for summary judgment is granted.

Counsel will present an appropriate order.

12. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

13. United States v. Tempia, 35 LW 2626 (4/25/67).